IN THE MATTER OF DISBARMENT OF
METRO HOLOVACHKA.

[No. 30,257. Filed May 11, 1964. Rehearing denied
July 7, 1964.]

484

*Albert H. Gavit,* of Gary and *Robert J. Downing,* of Chicagio, Illinois, for defendant.

*Edwin K. Steers,* Attorney General, *Robert W. Mc-Nevin,* Assistant Attorney General, and *John H. Hirschman,* Deputy Attorney General, for the State of Indiana.

LANDIS, C. J.—This is an original action for disbarment of Metro Holovachka, a practicing attorney of Gary, Indiana, and a former prosecuting attorney of the 31st Judicial Circuit, Lake County, Indiana. The action was brought pursuant to Rules 3-21 and 3-22 of this Court and was instituted by the Northwest Indiana Crime Commission, Inc., after obtaining leave of Court,[1] and prosecuted by the attorney general of

---

1. In opposition to the gratuitous statements of Judge Jackson in his concurring opinion, it should be noted under Rule 3-21 original actions for disbarment in this Court may be brought by persons other than the attorney general or the Disciplinary Commission appointed by this Court, in the event leave is granted therefor by this Court. Here it appears that the Northwest Indiana Crime Commission, Inc., filed with the

Indiana pursuant to the directive of this Court. The defendant Holovachka by way of response filed a pleading in substance denying the material allegations of the information.

The Hon. Newell A. Lamb, Judge of the Newton Circuit Court, was appointed as Commissioner to hear the evidence and report his findings of fact and recommendation. The hearing was held and the Commissioner has filed his findings of fact and recommendation, finding that the said Holovachka has violated his oath as an attorney and as a member of the bar of this state as to charges 1, 2, 5 and 6 preferred against him, and recommending that Holovachka's name be forever stricken from the roll of attorneys licensed to practice law in the State of Indiana.

As the defendant's counsel has questioned the sufficiency of the evidence to sustain the first two (2) specific charges preferred against him in this cause, in the interest of brevity those two (2) charges and

Court on May 15, 1962, petition for such leave, and on said date offered for filing a verified information for disbarment, and further offered on May 28, 1962, a supplement to said information. We referred the matter to the Disciplinary Commission of this Court which on June 18, 1962, after a meeting of the full Disciplinary Commission recommended that an information for disbarment be permitted to be filed by said Northwest Indiana Crime Commission, Inc., in this Court, and that a Commissioner be appointed to conduct an investigation, hearing, and to make report and recommendation to this Court.

On June 25, 1962, this Court after being duly advised in the premises, unanimously and without dissent approved said recommendation of the Disciplinary Commission and granted the Northwest Indiana Crime Commission, Inc., permission to file an information for disbarment pursuant to the rules of this Court, which was thereupon filed.

It is clear, therefore, that petitioner having thus brought the instant disbarment action in complete compliance with our rules and after this Court had granted petitioner leave to proceed with such filing in view of the favorable recommendation of the Disciplinary Commission, no proper objection can now be made to the authority of petitioner to institute the proceedings in this case.

the evidence bearing thereon will be considered together.

The first specific charge against Holovachka with the Commissioner's finding is as follows:

"I. . . . That Metro Holovachka was prosecuted by the United States of America upon three (3) separate counts of indictment returned by a Federal Grand Jury charging Metro Holovachka with wilfully evading his federal income tax for the years 1955, 1956 and 1957 by filing false and fradulent [sic] tax returns.

"Said charge is contained in rhetorical paragraphs 5, 6, 7 and 8 of the Original Verified Information.

"The Commissioner finds that Metro Holovachka was indicted and convicted by a jury on each of the three counts of the indictment and sentenced by the United States District Court, Northern District, Hammond Division, for a term of three years and assessed a fine thereon in the sum of $10,000.00. That said conviction remains in force and effect and has not been reversed or modified although having been appealed to the United States Supreme Court.

"That said conviction is based upon evidence tending to and which did show that said defendant, during his tenure as prosecuting attorney for the 31st Judicial Circuit of the State of Indiana, more particularly during the years 1955 through 1957, did fail to report and pay to the United States Government taxes upon the income he received, which aggregate income was $179,543.00 over and above the amount of income that said defendant actually reported to the United States Government.

"The above stated sums of money came to the defendant by way of cash transactions for which no explanation was given, and the Commissioner finds that said sums of money came to the said defendant by way of 'pay-offs,' 'protection,' 'kickbacks' and 'bribes' to Metro Holovachka in return for the use of his office to support and protect gambling and vice interests in Lake County, Indi-

ana, which County comprises the 31st Judicial Circuit of the State of Indiana.

"The Commissioner finds in this regard that Metro Holovachka was convicted of a felony and that he has violated his oath as an officer of the Courts of the State of Indiana and also his oath and duties as a prosecuting attorney in and for the 31st Judicial Circuit of the State of Indiana.

"As a part of said conviction for income tax evasion the Commissioner has tendered to the Supreme Court of Indiana a document showing that Metro Holovachka has been ordered to surrender himself to the United States Marshal at Hammond, Indiana on Monay, June 24, 1963, for the hearing of sentence on said conviction. Moreover, your Commissioner finds that said conviction is final in every respect and has tendered to the Court certified copies of the Order of the Supreme Court of the United States dated June 10, 1963 denying Mr. Holovachka's Petition for a Writ of Certiorari and an Order of said Court dated June 17, 1963 denying Mr. Holovachka's Petition for Rehearing in said Court."

The defendant argues that his conviction for income tax violation does not involve moral turpitude and that there is not a scintilla of evidence or one word of testimony in the record to support the Commissioner's finding that the defendant took "pay-offs", "protection", "kick-backs", and "bribes".

Defendant's argument is apparently based upon his contention there is a lack of direct evidence of "pay-offs", "bribes", etc., received by him and that in the absence of such direct evidence there is no causal connection between Holovachka's position as prosecutor for the 31st Judicial Circuit (Lake County), and his accumulation of vast sums of money, viz: $327,724.27 during the same period and the quantity of vice and gambling in the county.

The second specific charge against Holovachka with the Commissioner's finding is as follows:

"II. . . . That Metro Holovachka, during his tenure as prosecuting attorney for the 31st Judicial Circuit of Indiana, failed and refused to prosecute those persons guilty of violating the laws of the State of Indiana as those laws relate to vice and gambling in said state and particularly with respect to Lake County, Indiana, all of which is contrary to his sworn oath to uphold the laws of the State of Indiana.

"Said charges are contained in rhetorical paragraphs 8, 9, 10, 11, 15 and 18 of the Original Verified Information.

"The Commissioner finds that Metro Holovachka did, by a conscious and deliberate course of conduct, during his tenure as prosecuting attorney as hereinbefore stated, use the influence and power of his office to further spread the gambling and vice operations in Lake County, Indiana.

"It is further found that violations of the law were known to him and that by a designed course of conduct he actually aided and abetted the establishment of a syndicated gambling operation in Lake County, Indiana, enabling those violating the law to reap substantial profits in the gambling type pin-ball operations and in the operation of so-called policy wheels.

"The Commissioner further finds that by the use of the defendant's office he destroyed the organization of Local No. 1 of the Automatic Equipment and Coin Machine Operators' Service and Repairmen's Union.

"Your Commissioner further finds that during the defendant's tenure as said prosecuting attorney, prostitution was permitted to operate openly and notoriously in Lake County, Indiana, that one John Formusa, owning and operating the M & J Motel and personally known to said defendant, reported net income to the Federal Government amounting to $144,000.00 for the years 1955 through 1957, all of which income came exclusively from the operation of the house of prostitution

known as the M & J Motel in Lake County, Indiana.

"It is further found that Metro Holovachka consorted with and used the influence of his office and position to assist gambling interests in securing favors from other departments of local government; that he attempted to intimidate and pressure a member of the Lake County Planning Commission and Board of Zoning Appeals into voting favorably on a zoning variance request by such gambling interests, and upon failure to receive a favorable ruling or to prevent such member from inspecting and investigating the operation of such gambling business, the said Metro Holovachka attempted to solicit a bribe from said official; that in failing to solicit such bribe from such official, the said Holovachka brought about the indictment and ultimate prosecution and conviction of the said public official.

"The Commissioner further finds that Metro Holovachka used the power of his office to nolle prosque [sic] indictments against public officials who had been indicted by a grand jury prior to said defendant's election to office and that said indictments charged said officials with misconduct and malfeasance in office in that they permitted gambling to operate openly and notoriously in the communities in Lake County, Indiana. All of said indictments were returned prior to the commencement of Metro Holovachka's term of office as prosecuting attorney and said indictments were dismissed the day following the day said defendant took said office, said dismissals being dated January 2, 1953.

"Your Commissioner finds that Charge II is amply sustained by the testimony of Mr. Richard Sinclair, Mr. Gilbert Sellers, Mr. George Lindberg, Mr. Delbert P. Hopkins, Mr. Harold Swain, Mr. John Testo, Mr. Louis Lindinger, Mr. Joe Petrunich and Mr. Frank Witecki."

The defendant's counsel argues the evidence in no way substantiates the findings of the Commissioner as to this charge, for the reason that the mere fact there

was vice and gambling in Lake County does not necessarily connect the defendant-prosecuting attorney with the same, nor mean that the defendant used his office to aid or abet such criminal activity.

We shall now proceed to a consideration of the evidence introduced in support of charges 1 and 2.

At the outset it is to be noted that it is unquestioned as found by the Commissioner that Holovachka was convicted by the United States District Court of wilfully evading his federal income tax for three (3) years, to wit: 1955, 1956 and 1957 by filing false and fraudulent returns.

The witness Richard Sinclair, an employee of the federal government in the General Accounting Office, Washington, D. C., and assigned to the United States Senate Rackets Committee in 1958, 1959 and 1960, testified as to having conversations with Holovachka and as to such Committee's findings that the syndicate operation of coin-operated pinball machines, of the gambling type, was supported by Holovachka while he was prosecutor of Lake County. The witness had made a check of Holovachka's income tax returns for the years 1945 through 1958, and testified the examination revealed the following:

| 1945 — $ 4,649.38 | 1952 — $ 10,244.56 |
|---|---|
| 1946 — 4,085.80 | 1953 — 32,402.39 |
| 1947 — 4,903.90 | 1954 — 33,786.70 |
| 1948 — 2,733.14 | 1955 — 38,967.67 |
| 1949 — 2,456.61 | 1956 — 38,798.50 |
| 1950 — 3,389.20 | 1957 — 50,817.36 |
| 1951 — 8,521.10 | 1958 — 53,852.60 |

During the process of securing Holovachka's files and records, Holovachka interfered with the service of process by John Thiede, an employee of the General

Accounting Office, and took out from under the sub-poena the records which were in the office of his (Holovachka's) accountant and refused to cooperate in any way with the Committee and refused to honor the subpoena of the Senate Committee.

The evidence was that Holovachka was appointed controller of the city of Gary, Indiana, on January 1, 1952, and served until December 31, 1952, when he took office as prosecuting attorney until December 31, 1958, which was the end of his second term of office.

It further appeared that the Sunset Supply Company of Gary, Indiana, and associated companies, controlled the pinball operations in Lake County and that their collections from pinball machines for the years from 1954 to 1958 were $6,354,285.05. This figure represented only one-half of the total income from the machines because the location owner, where the pinball machine was placed, received the other one-half of the overall total after pay-offs were made from the collections.

The witness Sinclair testified that the pinball income of Steven Sohacki and George Welbourn, the principal owners and operators of the Sunset Supply Company, was as follows:

|  | MR. SOHACKI | MR. WELBOURN |
|---|---|---|
| 1954 — | $ 160,228.56 | $ 160,228.56 |
| 1955 — | 424,077.00 | 424,077.00 |
| 1956 — | 259,071.37 | 259,071.37 |
| 1957 — | 100,000.00 | 100,000.00 |
| 1958 — | 115,000.00 | 115,000.00 |

During the course of the Senate Committee investigation all of these matters were discussed with Holovachka, but he was not helpful to the Committee in any respect.

The witness Sinclair further testified he contacted a John Formusa who operated the M & J Motel in the Gary area, and that Mr. Formusa told him the motel was a house of prostitution of national prominence. An examination of the books and records of the M & J Motel revealed that on an investment of $16,000.00 the net reported income for tax purposes for the year 1955 was $11,193.54; for the year 1956 it was $46,669.56; for the year 1957 it was $56,603.64; and for the year 1958 it was $63,524.40, the gross figure for such year being $112,548.00.

An examination of the records of the Lakeside Specialty Company of East Chicago, Indiana, revealed that presents had been sent to Holovachka from the group owning and operating such pinball machine company.

The banking transactions of Holovachka for the years 1951 through 1958 showed that approximately $327,000.00 in cash transactions primarily in denominations of $20.00 or less, went through Holovachka's bank account, and it appeared that when he was confronted with this information, he refused to offer or make any explanation of the source of this money. This figure represented only cash transactions and did not reflect money deposited to Holovachka's account as the result of checks or similar type transactions.

The witness Gilbert Sellers, a former Indiana State Police Officer, was assigned to the Dunes Park Post No. 1 of the Indiana State Police in 1957 and 1958, and worked extensively in Lake County in an effort to quell gambling and vice alleged to be operating there. He testified he personally knew bookmaking establishments operated there openly and notoriously, that prostitution was open and notorious, there were eight (8) or ten (10) such operations in the central Gary area, and there also was an extensive policy-wheel opera-

tion in Lake County. He further testified he had personally observed gambling type pinball machines in a number of the restaurants and taverns of Lake County, and that most of the arrests by the State police were on view without affidavits and warrants having been issued so as to remove the likelihood of tip-offs that otherwise might occur.

Witness George Lindberg was a newspaper reporter in Gary, and his work required him to examine daily the police records as to arrests and charges. He had played pinball machines in restaurants and taverns and had received pay-offs in money for his winnings. He testified that prostitutes worked their trade in most of the taverns, on the streets, and in the bar rooms, and he was frequently solicited by them. From his personal observation practically every restaurant and tavern in Lake County had gambling-type pinball machines and bookmaking and policy-wheel operations operated openly. He had written several articles on these matters in the Gary Post Tribune, and the defendant Holovachka was a subscriber to the paper.

Witness Delbert Hopkins was the Acting Chief of the Collection Division of The Bureau of Internal Revenue for Indiana. He testified that gambling stamps issued to individuals in Lake County increased from 229 for the year 1955-1956, to 862 in the year 1957-1958. One gambling operator, a Hutchins Upshaw, paid to the federal government in wagering tax in excess of $100,000.00 for two (2) successive years. Since this payment was based on ten percent (10%) of the gross receipts from gambling, such an amount would indicate this one (1) operator collected over $1,000,000.00 each of such years in his gambling operation in Gary, Indiana.

Witness Harold Swain was a former policeman, employed by the Northwest Indiana Crime Commission. He was a police captain when Peter Mandich was mayor of Gary and Holovachka was city controller in 1952. He testified during his tenure as captain, that Holovachka made a newspaper statement that there were too many men assigned to vice and gambling enforcement. He also was requested by Holovachka to go easy on an after-hours tavern operator as such person was a friend of his. Swain continued his efforts to clean up gambling and vice but was removed from his position by a new police chief appointed by Holovachka as acting mayor when mayor Mandich was out of town.

Swain also testified he served Holovachka with a subpoena to appear at the hearing before the Commissioner in this cause, but Holovachka in a fit of temper told him to " . . . get the hell out of here," and ordered him from the property. Holovachka stated to Swain he had no intentions of honoring the subpoena and being present at the hearing.

Witness John Testo was a president of local 101 for the marble tile and terrazzo workers' union and had formed a union for the coin-operated machine servicemen in 1952. He received a charter for the union local No. 1, which is no longer in operation.

Testo testified he had conversations and meetings with Holovachka when the latter was prosecuting attorney of Lake County, and was told by Holovachka to get "straightened out" or he'd have trouble. Testo, on learning the pinball machines of his union affiliates were to be removed from the prosecutor's office, complained to Holovachka. In return for his complaints he received only threats and harrassment and was required to take the union books and records into Holovachka's office in response to an alleged probe of un-

ion activities, but he never appeared before any duly appointed grand jury. After the removal of the pinball machines belonging to members of Testo's union, other machines belonging to the syndicate were moved into the same places and remained there without interference from the prosecutor's office. This procedure brought about the demise of local No. 1 because its members could not function after the removal of their pinball machines, and the union collapsed with the loss of business locations.

Witness Frank Witecki was also a member of local No. 1 and the owner of coin-operated equipment consisting of pinball machines. Witecki had established business places for his machines but was forced to remove the machines by the actions of the prosecutor's office during the time that Holovachka was prosecutor. He stated he knew of his own knowledge that other machines were moved into the same places where his machines had been and that the new machines were not removed later by the prosecutor's office.

This witness further stated these occurrences were matters of common knowledge.

Louis Lindinger was a former member of the East Chicago Police Department and was for the past few years the owner-operator of a tavern in Gary. He also worked in a steel plant and was involved in local Gary politics.

. This witness stated that sometime in 1954 or 1955 during the pre-election season Holovachka came to his tavern and talked with him. Holovachka was then prosecutor and told the witness Lindinger to move the pinball machines from the front of the tavern to the rear thereof. The machines belonged to the syndicate group.

At a later time, in approximately 1958, Holovachka came back to the tavern and asked Lindinger to sign a slip of paper withdrawing from the race for precinct committeeman in that precinct. Mr. Lindinger asked for time to consider this withdrawal and was told he would have to come to a decision in the intervening time between Friday and Monday. He was told by the prosecutor that the latter didn't want any monkeying around and if he, Lindinger, did not withdraw from the race for committeeman, that Holovachka would take him before the grand jury and have him indicted for perjury and false registration. On another occasion Holovachka requested Lindinger to come to the prosecutor's office. Lindinger obeyed the request from Holovachka.

Holovachka invited Lindinger to a special meeting in the Gary Hotel and while Lindinger was there he saw Holovachka in the crowd with John Formusa and Steve Sohacki. Lindinger was acquainted with both men, knew who they were, and that Formusa ran a house of ill-fame, and subsequently the M & J Motel, another house of ill-fame, and some similar business operations in the Gary area, and that Sohacki was the head of the pinball syndicate in the Lake County region. He stated that the prosecutor, Holovachka, seemed to be well acquainted with the people in the room and that the discussion at the meeting related to local precinct politics.

Mr. Joe Petrunich stated he had lived in Lake County for a long time and at an earlier time he had become active in Boy Scout work in the Cedar Lake area. Many of the residents in the area had asked him to become active in politics and as a result he had been appointed to the Lake County Plan Commission and the board of zoning appeals. He had served as president of one of the boards. The witness stated that he had received a

call from Metro Holovachka, the prosecutor of the area, about a rezoning application pending on behalf of the Sunset Supply Company. The company was located in Gary and Mr. Holovachka wanted the company to receive favorable treatment on the application. Mr. Petrunich, who drove a truck as a means of livelihood, was charged by the board and commission with the duty of personally examining into the locations asking for rezoning and variances. He had visited the Sunset Supply Company location after a remonstrator at a hearing had complained of savage dogs, and that she was met at the door of the Sunset Supply building by a man carrying a sawed-off shotgun.

Mr. Holovachka warned Petrunich, after the latter stated he would make these inspections, that maybe he (Petrunich) " . . . wouldn't be a member so long . . .". The application was not approved and Joe Petrunich was indicted for accepting a bribe as a public official in connection with his duties as a board member. The case was set for trial soon after the indictment and Petrunich stated he had difficulty securing a lawyer to represent him in the short time allowed. He went to see the prosecutor, Holovachka, and explained the problem and stated that a lawyer had offered to take his case for $2,000.00, which he stated was more than he could afford. Holovachka then told him that he should give Holovachka the $2,000.00 and the case would be dropped. Petrunich told Holovachka he wasn't guilty and that he didn't feel he ought to give anybody $2,000.00. After his failure to give Holovachka the money, he was convicted of the charge.

To summarize with reference to charge 1, the evidence in the record which is referred to in the Com-

missioner's finding, is to the effect that the defendant Holovachka was convicted on each of three (3) counts of the indictment against him charging that during his tenure as prosecuting attorney, and more particularly during the years 1955 through 1957, he failed to report and pay to the United States government taxes upon the income he received, which aggregate income was $179,543.00 over and above the amount of income that said defendant actually reported to the United States government. The Commissioner specifically found that said sum of money came to the defendant Holovachka by way of cash transactions for which no explanation was given and that the money came to Holovachka by way of "pay-offs", "protection", "kick-backs" and "bribes" in return for the use of his office to support and protect gambling and vice interests in Lake County, Indiana. We know judicially that the salary of the prosecuting attorney as fixed by statute for the years 1953 through 1958 was not less than $10,500 nor more than $12,000. However, Holovachka's average annual reported income for the years he was prosecutor (1953-1958) was considerably in excess of this amount, viz: $41,437, although his previous average reported annual income as an attorney for the eight (8) years prior to his becoming prosecutor had been only $5,123.

Defendant does not deny the probative effect of his judgment of conviction for failing to report the additional sum of $179,543.00 in federal income taxes for the years 1955 through 1957 when he was prosecuting attorney, but contends his conviction for income tax violation does not show moral turpitude. Bearing upon the issue of moral turpitude, there is direct evidence in the record that Holovachka was the recipient over a seven (7) year period (1951-1958) of the sum of

$327,000.00 in cash transactions of $20.00 or less, over and above all checks received by him, and that he refused to cooperate with the Senate Rackets Committee investigation in giving any information as to the gambling, prostitution and vice conditions which were prevalent in Lake County, Indiana. There is further direct evidence as to the fabulous profit derived by the gambling and prostitution syndicates in Lake County, Indiana, under the very nose of the prosecutor Holovachka, and regarding the investigation of which he offered no cooperation whatever. Holovachka himself seized out from under a subpoena copies of his books and records held by his accountant when they were being procured by the Senate Committee. The harrassment and vindictiveness he employed toward any persons standing in his way appears in the evidence heretofore discussed. It was properly concluded by the Commissioner from all of this evidence as found by the Commissioner that Holovachka received this vast amount of money by way of pay-offs, protection, kickbacks, and bribes in order that his office would permit vice and gambling to operate without interference. It is difficult to conceive of a clearer example of illicit or depraved conduct than that here exhibited by Holovachka, who in his lust for wealth and power increased his income from a paltry $5,123 average a year as a lawyer to amounts far exceeding the maximum salary of $12,000.00 provided by statute for the prosecutor of Lake County. His receipt in his bank account of $327,000.00, in small cash denominations which was unexplained by him, obviously was from vice and gambling activities which owed to Holovachka every cent of that money for their continued and successful operation in defiance of the law which it was Holovachka's sworn duty to uphold and enforce. This was utter

depravity and moral turpitude of the rankest sort, and distinguishes this case entirely from *Baker et al., etc.* v. *Miller* (1956), 236 Ind. 20, 138 N. E. 2d 145; and *In re Baugh* (1954), 233 Ind. 424, 120 N. E. 2d 262. We must agree with the Commissioner's finding that Holovachka's conviction on three (3) counts of felony in filing false and fraudulent income tax returns which failed to report illicit earnings it appears he received therefrom for the years 1955, 1956 and 1957, constituted a violation of his oath as an attorney,[2] and also his oath as a prosecuting attorney[3] of the 31st Judicial Circuit of the State of Indiana.

With regard to charge 2, to summarize, it was charged that Holovachka during his tenure as prosecuting attorney failed and refused to prosecute per-

2. "Upon being admitted to practice law in the State of Indiana, each applicant shall take and subscribe to the following oath or affirmation:

" 'I do solemnly swear or affirm that: I will support the Constitution of the United States and the Constitution of the State of Indiana; I will maintain the respect due to courts of justice and judicial officers; I will not counsel or maintain any action, proceeding, or defense which shall appear to me to be unjust, but this obligation shall not prevent me from defending a person charged with crime in any case; I will employ for the purpose of maintaining the causes confided to me, such means only as are consistent with truth, and never seek to mislead the court or jury by any artifice or false statement of fact or law; I will maintain the confidence and preserve inviolate the secrets of my client at every peril to myself; I will abstain from offensive personality and advance no fact prejudicial to the honor or reputation of a party or witness, unless required by the justice of the cause with which I am charged; I will not encourage either the commencement or the continuance of any action or proceeding from any motive of passion or interest; I will never reject, from any consideration personal to myself, the cause of the defenseless or oppressed; I will abstain from direct or indirect solicitation of employment, to institute, prosecute, or defend against any claim, action or cause of action; so help me God.' " Rule 3-20 of the Indiana Supreme Court.

3. "Every person elected or appointed to any office under this constitution, shall, before entering on the duties thereof, take an oath or affirmation, to support the Constitution of this State, and of the United States, and also an oath of office." Art. 15, §4, Constitution of Indiana. See also: 22 I. L. E. Officers, §32.

sons guilty of violating the vice and gambling laws of the state, contrary to his sworn oath to uphold the laws of the state. The Commissioner's findings that Holovachka consciously and deliberately used the influence and power of his office to further the spread of vice and gambling operations in Lake County, Indiana, and more specifically that violations of the law were known to him and that by a designed course of conduct he aided and abetted the establishment of syndicated gambling and permitted prostitution to operate openly and notoriously, enabling those violating the law to reap enormous profits, are amply supported by the foregoing evidence heretofore recited in this opinion. Similarly are the findings that Holovachka by the use of his office destroyed the organization of a labor union and secured favors for gambling interests from local government; that he attempted to solicit a bribe from a local official and when he failed in such attempt, brought about the indictment and conviction of such public official; that he further used the power of his said office immediately on assuming office, to nolle prosequi indictments against public officials which had charged such officials with permitting gambling to operate notoriously in Lake County, Indiana.

The contention of defendant's counsel that there was no necessary relationship between the existence of vice and gambling in Lake County, Indiana, and Holovachka's conduct of his office so as to connect him with the same is completely and entirely unfounded. On the contrary, the facts and circumstances heretofore related are so inconsistent with any suggestion by his counsel that Holovachka was not connected with the vast river of crime and vice in Lake County, that such contention appears ridiculous. The argument that Holovachka was innocent of any wrongdoing has the impact of an empty

shell when viewed in the light of the unchallenged facts appearing throughout the record of this case.

However, were we to assume for the purpose of defendant's argument that contrary to the strong case made by the evidence, Holovachka did not use his office to foster vice and corruption, but merely was oblivious of the repeated violations of the law which occurred uninterruptedly in his view in Lake County when he was prosecuting attorney, what would be the result? We would still be forced to conclude that this type of moral decay and general depravity is not compatible with the duty owed to the courts and the citizens of a judicial district by one who is himself an officer of the court as well as a prosecuting attorney and an attorney at law. Such conduct cannot exist side by side with the high degree of honesty and integrity required of members of the bar, and is contrary to the oath each must have assumed before the bar of this Court and the law. See: *Wilbur* v. *Howard* (1947), 70 F. Supp. 930, (Reversed on other grounds.) ; *State ex inf. McKittrick* v. *Graves, Pros. Atty.* (1940), 346 Mo. 990, 144 S. W. 2d 91; *The People* v. *Anglim* (1904), 33 Colo. 40, 78 P. 687; *In re Simpson* (1920), 79 Okla. 305; 192 P. 1097.

We must conclude the Commissioner's finding under specification 2 was proper and correct and that this specification under any proper consideration of the same has been fully established by the evidence.

The third and fourth charges preferred against the defendant were found by the Commissioner not to be established by sufficient evidence and in view of the result we have reached in this opinion it is not necessary that we discuss such specifications.

The fifth specific charge is that defendant Holovachka did, during the year 1952, while serving as the duly appointed controller of the city of Gary, Indiana, engage in the purchase and sale of Barrett Bonds issued by the city of Gary and that in engaging in said transactions while serving as an official of said unit of government, he violated the provisions of Burns' §48-1247 (1963 Repl.),[4] and Burns' §10-3713 (1956 Repl.),[5] relating to contracts by and between public officials and the units of government which they serve.

The Commissioner found that the defendant was controller of the city of Gary from January 1, 1952, to December 31, 1952, and during that time served as a member of the board of public works of said city and had authority to approve improvement contracts for said city and that he did approve certain Barrett Bonds improvement projects hereafter named. It was further found as follows:

That the defendant Holovachka committed perjury in making three (3) affidavits on June 8, 1955, with respect to district sewer 87, and local sewers 225 and 226, wherein he stated the assignment of the improvement contract from the contractor to Holovachka took place after the work had been accepted by the city of Gary when in truth the assignments took place respectively 22, 91 and 58 days prior to the date the work was accepted by the city of Gary.

That the defendant Holovachka committed perjury in making an affidavit on June 8, 1955, with respect to a sewer project of the city of Gary, wherein he stated

---

4. Acts 1905, ch. 129, §46, p. 219; 1907, ch. 254, §1, p. 538.
5. Acts 1905, ch. 169, §517, p. 584.

there was no agreement between him and any of the contractors pertaining to the assignment prior to the date of said assignment; whereas in truth, the defendant did in fact prior to said assignment, make an agreement with all contractors that he would buy all contracts they had if they would bid on the public improvements.

That the defendant Holovachka committed perjury in testimony before the securities commissioner of the State of Indiana in which the said Holovachka stated H & M Realty and the H & M Construction Company were companies which he owned and that they were not a partnership or corporation, when in truth and in fact the said H & M Realty Company and the H & M Construction Company were a partnership for purchasing Barrett Bonds, and this partnership was owned by Holovachka and Peter Mandich.

The Commissioner's findings appear to us to be amply sustained by the evidence. Defendant's counsel has argued as to the first three (3) affidavits that the assignments to Holovachka did not take place until after the work was accepted by the city. This contention is completely unfounded as it is diametrically opposed to the testimony of the city engineer Farquharson and the assistant city engineer Reiner, who were the sole witnesses to testify on such point. Similarly, defendant's arguments are unfounded as to the insufficiency of the evidence to support the Commissioner's findings as to the false statements in the fourth and fifth affidavits. The Commissioner's findings are supported by clear testimony in the record on the subject.

It therefore appears from the record evidence and the Commissioner's findings that the defendant com-

mitted the felony of perjury[6] in five (5) different respects, and it further appears that he violated two (2) other statutes[7] of the state of Indiana prohibiting contracts between public officials and the units of government they serve, the violation of which also constitute felonies.

The sixth and last charge preferred against the defendant is that said defendant Holovachka was guilty

6. Burns' §10-3801 (1956 Repl.), Acts 1905, ch. 169, §474, p. 584; 1927, ch. 203, §7, p. 580. Burns' §10-3802 (1956 Repl.), Acts 1905, ch. 169, §475, p. 584; 1927, ch. 203, §8, p. 580.

7. Burns' §10-3713 (1956 Repl.), *supra*, is as follows:

"Any state officer, county commissioner, township or town trustee, mayor or a common councilman of any city, school trustee of any town or city, or their appointees or agents, or any person holding any appointive power, . . . of this state, who shall, during the time he may occupy such office or hold such appointing power and discharge the duties thereof, be interested, directly or indirectly, in any contract for the construction of any state house, court house, school house, bridge, public building or work of any kind, erected or built for the use of the state, or any county, township, town or city in the state, in which he exercises any official jurisdiction, or who shall bargain for or receive any percentage, drawback, premium or profit or money whatever, on any contract, or for the letting of any contract, or making any appointment wherein the state, or any county, township, town or city is concerned, on conviction, shall be fined not less than three hundred dollars [$300] nor more than five thousand dollars [$5,000], and be imprisoned in the state prison not less than two [2] years nor more than fourteen [14] years, and disfranchised and rendered incapable of holding any office of trust or profit for any determinate period." Acts 1905, ch. 169, §517, p. 584. Burns' §48-1247 (1963 Repl.), *supra*, is as follows:

"No member of the common council or board of trustees, nor any officer, clerk, or deputy of such officer, or other employee of any city or incorporated town of this state, shall either directly or indirectly, be a party to, or in any manner interested in, any contract or agreement, either with such city or incorporated town, or with any officer, board, clerk, deputy or employee of such city or incorporated town, for any matter, cause or thing by which . . . any member thereof, or by any officer, board, clerk, deputy or employee of such city or incorporated town. Any contract in contravention of the foregoing provisions shall be absolutely void; and any person violating any of such provisions shall be fined not more than one thousand dollars [$1,000] and imprisoned in the state prison not less than one [1] year nor more than ten [10] years. . . ." Acts 1905, ch. 129, §46, p. 219; 1907, ch. 254, §1, p. 538, *supra*.

of offensive personality in his dealings with the U. S. Senate Select Committee on Improper Activites in the Labor or Management Field.

The oath of admission of an attorney in the State of Indiana (heretofore set forth in this opinion) contains, among other duties and obligations imposed upon him, the specific undertaking that he will abstain from offensive personality.

The Commissioner found that Holovachka failed and refused to cooperate with said Committee at its hearings, and that he obstructed the course of investigation by interferring with the lawful subpoena of his tax records. It was further found that Holovachka failed and refused to obey the subpoena of the State of Indiana ordering his appearance at the trial on March 12, 1963, in violation of Burns' Indiana Statutes, §10-1010 (1956 Repl.).[8]

Defendant's counsel has argued as to the authority of the U. S. Senate Committee to investigate Holovachka. However, it is not disputed that the Committee was authorized to make investigations in the labor and management field.

The evidence is clear that the union (local No. 1) commenced by John Testo and adhered to by many small coin-operated machine businessmen had suffered greatly at the hands of a despotic prosecutor and a giant syndicated operation in Lake County, Indiana. The power wielded by the defendant as prosecutor in behalf of the huge syndicate could brook no interference from this struggling new labor union in Lake County, Indiana. The inquiry was indeed within the subject matter of its proper sphere and legitimate, and if Holovachka had nothing to hide from

8. Acts 1905, ch. 169, §504, p. 584.

the law and the light of day, he would have had no understandable reason for refusing to cooperate in the seeking out of unlawful activities toward labor forces in that area. He was under a duty to cooperate with a lawful investigation, and his defiant seizure in the presence of investigators of his tax records from an accountant when they were under lawful subpoena by the investigating Committee, and his subsequent abusive refusal to honor the subpoena of the Commissioner in this case under the circumstances disclosed by the evidence, were a violation of his oath as a member of the bar of this state. His own words, spoken in a rage, to the officer serving the legal process of the Commissioner appointed by this Court, were that he had no intention of honoring the subpoena to appear at the hearing. It is further uncontradicted that Holovachka ordered the officer serving the process off the premises. It would be hard to envision a more flagrant case of offensive personality than that here exhibited in utter defiance of legal process and authority of this Court. The subsequent uncorroborated affidavit for continuance by Holovachka's attorney, suggesting that in such counsel's opinion Holovachka was ill at the time of the hearing, makes no reference to Holovachka's unquestioned previous belligerent and defiant conduct, and has little if any probative effect with relation to this charge.

We must consider this charge and the Commissioner's findings to be proved.

Defendant has also contended that the Commissioner erroneously denied his attorney's motion for a continuance in this cause.

Defendant's basis for a continuance was predicated upon the above-mentioned affidavit of his trial counsel, Albert Gavit, who alleged that in his opinion the de-

fendant Holovachka was not in condition to attend the hearing or to prepare for the hearing of the cause. The affidavit was not supported by the statement or testimony of any medical witness as to the physical condition of Holovachka. The attorney general, nevertheless, filed a counter-affidavit in opposition thereto.

Defendant's motion for continuance does not proceed under Burns' §2-1301 (1946 Repl.),[9] which makes provision for the granting of continuances on account of the absence of evidence or the absence of a witness where, among other things, the materiality of the evidence is shown. No such showing was here made.

No statutory provision is made for the granting of continuances because of illness, but this area of the law has been covered in this state by judicial decision. The general rule enunciated has been that it is a matter to be determined within the sound discretion of the trial court.

Defendant has cited the cases of *Pierce* v. *Merchants Heat, etc., Co.* (1920), 189 Ind. 571, 127 N. E. 765, 128 N. E. 598; *House* v. *Cardinal* (1919), 69 Ind. App. 428, 122 N. E. 11; and *Deacon* v. *Rasch* (1907), 40 Ind. App. 77, 81 N. E. 84, as supporting his contention that the Commissioner abused his discretion in overruling his motion for continuance, but none of those cases appear to be in point as in each of such cases a statement from a physician was furnished to support the party's contention of illness. In the case before us the mere naked statement of defendant's trial counsel that defendant was not in condition to attend the hearing or prepare for the hearing of the cause did not describe the nature of defendant's alleged condition nor furnish any medical evidence in

9. Acts 1881 (Spec. Sess.), ch. 38, §374, p. 240.

support thereof. It was therefore of little if any probative value, especially in view of the counter-affidavit by the attorney general, and in our judgment there was no error committed by the Commissioner in denying the requested continuance.

Defendant has argued that it was a violation of due process for the Commissioner to proceed with defendant's hearing although defendant did not show good cause, as we have been compelled to conclude, for the granting of a continuance. This argument is not well taken as the following treatment will demonstrate.

The defendant's license to practice law is a privilege rather than a natural or vested right, and is contingent upon the faithful performance of the duties imposed upon the attorney by the society which grants him the privilege. *In re Harrison, etc.,* (1953), 231 Ind. 665, 667, 668, 109 N. E. 2d 722, 723. And as we said in *Baker et al.* v. *Keisker* (1957), 236 Ind. 617, 620, 142 N. E. 2d 432, 434:

" . . . The first and continuing requirement of an attorney is that he be of good moral character. Rule 3-12. Being of good moral character necessarily implies that he will conform to the moral standards of his profession as provided (1) by law, (2) by his oath of office and (3) by the code of ethics of the legal profession."

Rule 3-24 of this Court provides the defendant has a right to attend his disbarment proceeding in person or with counsel. This is a fundamental right in all cases involving the revocation of a license to follow a given business or profession. It is comparable to, but no greater than, the right of a defendant in any civil proceeding to be present in person or with counsel if he chooses. And if he decides not to be present in such a case, his attendance cannot ordinarily be

compelled unless he has been subpoened as a witness. See: *In re Lucas* (1952), 230 Ind. 254, 102 N. E. 2d 909.

The defendant in the present case was served with due and proper notice of the hearing and he retained able counsel to represent his interests in the case. He failed to furnish any proper or legal basis for the granting of a continuance of the hearing. He certainly cannot ignore and thwart the progress of the orderly procedure of courts of justice by acting in defiance of their lawful processes. If he determines not to appear, that is a decision he may make; but he certainly cannot use his defiance of lawful process as a vehicle to enable him to assert at a later time that his constitutional rights to a hearing were impaired. That Holovachka actually intended in this case to defy the summons and subpoena of the Commissioner is not refuted, but it unequivocally appears from the record as heretofore stated that Holovachka told the officer serving the process that he would not honor the same, and in anger rudely ordered the officer off his premises. Holovachka's conduct in this case, if anything, indicates he was more interested in a state of anarchy than in the observance of law under the Constitution.

The cases cited by defendant are no authority for his right to a continuance on the sole basis of the naked and unsupported allegation and conclusion of his attorney as to his medical condition. Moreover, the facts in the record above referred to are clearly sufficient to rebut the contention of defendant's attorney that defendant's non-attendance was due to alleged illness. The Commissioner did not abuse his discretion in denying the continuance, and defendant is in no position to contend his constitutional rights to a hearing were violated.

Defendant has next contended that his constitutional rights to due process were violated by the bringing of these disbarment proceedings by The Northwest Indiana Crime Commission, Inc., by information against the defendant, after being granted leave by this Court to file such verified information.

Defendant's contention in substance is that the proceeding was in part based upon hearsay evidence, although it is conceded Holovachka's income tax conviction was not hearsay as it was a matter of public record. Nevertheless, we know of no reason why this proceeding could not be instituted on the basis of hearsay evidence.[10]

Defendant has also argued this case should have been referred to the Disciplinary Commission. Although the rules of this Court do not require the same,[11] we desire to point out that contrary to defendant's contention, as set forth in note one (1) to this opinion, *supra,* the information of the Northwest Indiana Crime Commission, Inc., was in fact referred by this Court to the Disciplinary Commission which recommended that the information be filed and a Commissioner be appointed to hear the evidence. This Court thereupon granted leave to file the information which was then filed and said Commissioner appointed. Defendant's argument is completely untenable.

It further appears the defendant has cited no legal authorities in support of the various arguments he has made under this contention, and under our rules the same is thereby waived. 2 I. L. E., Appeals, §387, p. 262.

---

10. See: *Maddox* v. *State* (1938), 213 Ind. 537, 541, 12 N. E. 2d 947, 948; 14 I. L. E., Grand Jury, §10, p. 561; 38 C. J. S., Grand Juries, §42(1), Notes 81-83.

11. Rules 3-21, *supra,* to 3-25 of Supreme Court of Indiana.

Defendant has also contended that error was committed by this Court in previously denying defendant's application for a change of venue from the Commissioner.

In reply to defendant's verified application for a change of venue, the attorney general on behalf of petitioner filed a memorandum in opposition thereto.

Defendant offered no evidence in support of his contention that a change of venue should be granted because of bias and prejudice of the Commissioner, but contends he has an absolute right thereto pursuant to Burns' §2-1401 (1946 Repl.).[12]

We know of no reason or basis under which the right to a change of venue prescribed by statute and rule of this Court should be extended to hearings of an administrative nature as the instant proceeding before the Commissioner in this case. The case of *In re Griffin* (1904), 33 Ind. App. 153, 69 N. E. 192, is entirely distinguishable from this case in such respect. No error was therefore committed in denying defendant's application for change of venue.

To conclude, we refer again to the Commissioner's findings of fact, which as heretofore indicated in this opinion, are amply and sufficiently supported by the evidence showing that the defendant, Metro Holovachka, has violated his oath of admission to the bar of this State with respect to four serious specific charges preferred against him, viz: charges 1, 2, 5 and 6, heretofore discussed. In accordance with the recommendations of the Commissioner based thereon, it is now therefore ordered by this Court that the name of Metro Holovachka be forever stricken

---

12. Acts 1881 (Spec. Sess.), ch. 38, §255, p. 240.

from the roll of attorneys licensed to practice law in the State of Indiana.

Achor and Arterburn, JJ., concur. Myers, J., concurs in result. Jackson, J., concurs with opinion.

CONCURRING OPINION.

JACKSON, J.—I concur in the result only of the majority opinion.

This action was instituted by one Francis E. Lynch, Operating Director of the Northwest Indiana Crime Commission, Inc., an alleged Indiana not-for-profit corporation, filing a "Verified Petition for Leave to File an Information . . . " with this Court. Leave was granted to file such information on June 25, 1962, and the same had been offered for filing by said Lynch on May 15, 1962. On May 28, 1962, informant offered to file what he or it designates as "Supplement To Information Tendered To Court May 15, 1962."

The alleged supplement is open to the charge made by defendant that it is shot through with hearsay, innuendo and opinion and was motivated by command from a political group of which informant was a member.

It is apparent that in the future, in order to avoid the complications present in the case at bar, actions in disbarment should be brought only by either the Attorney General or the Disciplinary Commission of this Court.

NOTE.—Reported in 198 N. E. 2d 381.