LOTTIE L. GROW *v.* INDIANA RETIRED TEACHERS COMMUNITY.

[No. 169A15. Filed June 29, 1971.]

*John T. Hume, III, and Smith & Jones,* of Indianapolis,

*John T. Sharpknack, Sharpknack, Bigley & Jurgemeyer,* of counsel, of Columbus, for appellant.

*Alan H. Lobley, Ice, Miller, Donadio & Ryan,* of counsel, of Indianapolis, for appellee.

HOFFMAN, C. J.—Plaintiff-appellant Lottie L. Grow (Mrs. Grow) brought an equitable action for rescission of a contract for "lifetime care" alleging fraud on the part of defendant-appellee Indiana Retired Teachers Community, an Indiana Corporation, hereinafter referred to as "the Corporation", and praying for restoration of the lump sum consideration.

The trial court, without the intervention of a jury, at the close of all the evidence, entered a judgment in favor of the Corporation. The overruling of appellant-Grow's motion for a new trial is the sole assignment of error in this appeal.

Special findings of fact and conclusions of law were requested by both parties. The findings of fact may be summarized as follows:

The Corporation was a nonprofit Indiana Corporation which had built and was operating a retirement home in Greenwood, Indiana. The basic financial plan of the Corporation was to sell life tenancies in its apartments to cover the cost of the building and other physical facilities. The residents were to pay, on a monthly basis, their pro rata share of the cost of operation as determined by the Board and based upon audits. The projected future occupancy was 256 persons in 212 apartments. It was estimated that the pro rata cost at full occupancy would be $150 per month. In 1962, the Corporation was granted a complete property tax exemption and in November of 1962, it opened.

In January of 1963, Mrs. Grow visited the Corporation and talked with Dr. Martin, the superintendent, who explained the operation and informed her that the present monthly charge was $150. Dr. Martin also stated that he did not antici-

pate an increase in the monthly rate for a long time and then, only five or ten dollars per month. At that time there was not full occupancy and the $150 monthly charge was not the actual pro rata cost to each resident but was the estimated pro rata cost based upon full occupancy. The Corporation was not charging actual pro rata cost because the directors did not believe the first residents should bear the total amount of fixed costs. Mrs. Grow's application was accepted but at that time she decided against entering the retirement home because she did not think she was financially able to do so.

In August of 1963, Mrs. Grow again contacted the Corporation and talked with Earl Wood, the then acting superintendent. Mr. Wood visited Mrs. Grow and on August 29, 1963, wrote her a letter outlining her financial situation showing how she could afford to move into the retirement home. Such letter stated, in part: "As I see your situation you can easily work out a program guaranteeing your life tenancy here and leaving you considerable extra funds." In 1963, the Corporation was again granted a complete property tax exemption. Mr. Wood's letter, based upon the figures then at the disposal of the Corporation, was correct because their original projections indicated that $150 per month would be adequate at full occupancy.

In August of 1964, Mrs. Grow signed her contract with the Corporation, which was accepted by the Corporation on September 3, 1964. At the time Mrs. Grow entered the retirement home her monthly charge was $150. As part of the $14,000 "founder's fee" or lump sum payment for her life tenancy, Mrs. Grow deeded her home to the Corporation. It was agreed that the realty was valued at $11,000. The Corporation thereafter sold the property on contract.

In January of 1965, Mrs. Grow's monthly charge was increased to $164 as a result of a graduated fee schedule based upon apartment size. Mrs. Grow paid the increase and continued her occupancy.

In 1965, the State Board of Tax Commissioners denied the Corporation's application for a tax exemption for the year 1964. The approximately $90,000 real property tax assessment, the fact that the rate of occupancy which had been projected was not being realized, and the increasing costs necessitated a reevaluation and recalculation of the monthly charges.

In August of 1965, the Corporation notified Mrs. Grow that her monthly charge was to be $256. Forty dollars of the increase was due to the tax liability, $29.13 due to the reduction in projected occupancy, and $36 due to an increase in costs, primarily food costs due to service and choice provided. Before this rate increase was put into effect, a management consultant firm advised that it could not find where the costs could be reduced. On January 11, 1966, Mrs. Grow moved out. She then brought this action for rescission of the contract.

In reviewing the record before us we may consider only the evidence most favorable to appellee, together with any reasonable inferences which may be drawn therefrom, and it is only when there is no conflict in the evidence and it can lead only to a conclusion contrary to the one which the trial court reached, will the decision be reversed. *A. S. C. Corporation* v. *First Nat. Bank, etc.* (1960), 241 Ind. 19, 23, 167 N. E. 2d 460; *Souerdike* v. *State* (1952), 231 Ind. 204, 206, 108 N. E. 2d 136; *Pokraka* v. *Lummus Co.* (1952), 230 Ind. 523, 532, 104 N. E. 2d 669.

Appellant has chosen to brief and argue three propositions. Appellant's Proposition No. I alleges that the trial court erred in failing to find that the Corporation was under a duty to disclose its true financial condition and the method used in computing the monthly service charge. Appellant contends that the duty to disclose arose by virtue of any one of three legal principles:

(A)   The relationship of trust and confidence.

(B)  The fact that the Corporation had superior knowledge.

(C)  The fact that the Corporation had made representations about the monthly service charge which distracted Mrs. Grow's attention from the fact that the monthly service charge was based upon an assumed rate of full occupancy rather than upon the actual occupancy.

Appellant's Proposition No. II alleges that the trial court erred in finding that all of the representations made by the Corporation were only expressions as to future conditions rather than representations of present facts.

Appellant's Proposition No. III alleges that the trial court erred in overruling her motion to amend her complaint, before judgment, to conform to the evidence received during the trial. Appellant contends that evidence received at the trial, without objection, established fraud by concealment on the part of the Corporation. Nevertheless, appellant asserts, the trial court made no finding upon the theory of fraud by concealment. In her brief appellant makes the following statement directed to Proposition No. III:

"This is not the paramount issue of this appeal. Appellant presents this issue to avoid the argument that the theory of concealment was never before the Trial Court."

Inasmuch as appellant has utilized the theory of concealment in her arguments supporting Propositions Nos. I and II, she has accomplished her goal. Assuming, arguendo, that the trial court abused its discretion in overruling appellant's motion to amend, appellant was not prejudiced thereby.

The first issue presented by this appeal is: Was the Corporation under a duty to disclose its true financial condition and the method used in computing the monthly charge? If the Corporation owed no duty to disclose such facts, there can be no fraud predicated upon the failure to disclose. *Larmore* v. *Peoples State Bank* (1934), 206 Ind. 66, 76, 188 N. E. 317.

In support of Proposition No. 1 appellant asserts a duty to

disclose arose (A) because a relationship of trust and confidence existed between Mrs. Grow and the Corporation, and the relationship between the parties was of the highest order because, as a result of the transaction, she placed in the hands of the Corporation her future welfare.

A review of the case law in Indiana relating to "confidential relationships" and their effect on actions for fraud reveals that such relationships generally arise where there is a blood, marital or fiduciary relationship. A confidential relationship may also arise because of personal friendship and when one party knows that the other is relying upon him in such a manner. It is essential that there be a dominant and a subordinate party, and it must be established by the facts that the alleged subordinate party was justified in relying upon a relationship of trust and confidence.

Appellant has cited several cases[1] which allude to the fact that contracts entered into by the aged or infirm, whereby they are to receive maintenance and care for the remainder of their lives, are in a class by themselves. However, because of the additional fact of the existence of either a blood or marital relationship in each of the cases, they are not authority for the proposition being asserted in the instant case.

*McCowen, Probst, Menaugh Co.* v. *Short* (1919), 69 Ind. App. 466, 118 N. E. 538 (transfer denied), involved the relationship of employer-employee, not a relationship of blood or marriage. In *McCowen* an injured employee, before the enactment of the Workmen's Compensation Act, was induced to settle a personal injury claim allegedly worth approxi-

---

1. *Whitsell v. Strickler* (1907), 167 Ind. 602, 78 N. E. 845. Mother to son-in-law, a member of the Bar. *Tomlinson v. Tomlinson* (1904), 162 Ind. 530, 70 N. E. 881. Mother to son. *Sherrin v. Flinn* (1900), 155 Ind. 422, 58 N. E. 549. Father to daughter and son-in-law. *Ashmead, et al. v. Reynolds, et al.* (1893), 134 Ind. 139, 33 N. E. 763, 39 Am. St. Rep. 238. Uncle to nephew. *Deckard v. Kleindorfer* (1940), 108 Ind. App. 485, 29 N. E. 2d 997. Aunt to nephew. *Lowman v. Lowman* (1938), 105 Ind. App. 102, 12 N. E. 2d 961. Father to son and daughter-in-law. *Webster v. Adams* (1923), 79 Ind. App. 261, 137 N. E. 883. Husband to sister of deceased wife and sister's husband. *Huffman v. Rickets* (1916), 60 Ind. App. 526, 111 N. E. 322. Mother to son and his wife.

mately $20,000 for $1,000, and the promise of lifetime employment for himself and his two sons. This compromise was buttressed with the threat of dismissal of the employee and his two sons if the settlement was not accepted. It cannot seriously be contended that *McCowen* is decisive of the issue in the instant case.

The record before us reveals that Mrs. Grow was born in 1884. That she is the widow of Dr. Grow. That they had a daughter who is now deceased. That she had enjoyed good health, and at the time of trial, wore glasses only to read small print. That she drove a car until 1965. In fact, she testified that, "I'm kind of an independent type of person, and I just like to get in my car and take off and do things." Mrs. Grow belonged to the Brown County Artist Association. She painted "scenes of woods, flowers, and things of that sort." She occasionally sold her paintings. She read the contract before she signed it. The "founder's fee" did not represent the bulk of Mrs. Grow's life savings. Thus, while Mrs. Grow was not a young woman by everyday standards, she was in good health, mentally alert, and capable of entering into a business transaction. The agreement did not deplete her assets and those with whom she dealt were in no way related by blood or marriage.

The evidence viewed in a light most favorable to the Corporation reveals that there was no confidential relationship as a matter of law and, therefore, the decision of the trial court is not contrary to law on the issue of the existence of a confidential relationship.

In the alternative, Mrs. Grow contends that a duty to disclose arose from the business transaction because of (B) the superior knowledge of the Corporation. It is contended that the failure to disclose the following facts which were within the knowledge of the officers and employees of the Corporation constituted fraud:

(1) In the winter of 1963, the Corporation knew that the monthly service charge of $150 per month was in-

adequate in that the actual monthly cost far exceeded $150 per resident.

(2) The Board of Directors of the Corporation decided that they were unable to determine an accurate monthly charge until the retirement home reached near full capacity.

(3) The Board of Directors further decided that they would continue to operate at a loss rather than increasing the monthly service charge.

In effect, appellant-Grow seeks to base her action for fraud upon the fact that the Corporation failed to disclose to her that the $150 monthly charge was the amount that the projected figures revealed would be necessary at full occupancy and not the mathematical division of operating cost by the number of existing residents. In support of this contention appellant cites three cases, all of which are distinguishable from the facts of the instant case.

In *Louisville, New Albany and Chicago R. W. Co.* v. *Bodenschatz* (1895), 141 Ind. 251, 39 N. E. 703, specific performance of a contract was denied because the plaintiff had made direct misrepresentations regarding the placement of a railroad switch by a competing railroad. In *Sriver* v. *Maley* (1958), 128 Ind. App. 619, 151 N. E. 2d 518, the buyer recovered damages in a tort action against the seller who was the president, general manager and principal stockholder of a close corporation. The seller sold his total interests in the corporation and this court found that there had been a deliberate misstatement of the debts to the extent of $8,233.82. The court further found that such misstatement was material and had been relied upon by the buyer. In *Fassnacht* v. *The Emsing Gagen Company* (1897), 18 Ind. App. 80, 46 N. E. 45, this court was faced with a situation wherein the payee, knowing that the gratuitous surety was unaware, failed to disclose the fact that the note being signed included a preexisting debt. This court held that where material facts are concealed from the surety the agreement is voidable.

The particular facts and circumstances of the case determine whether a duty to speak arises. *Roberts* v. *Paine* (1938), 124 Conn. 170, 199 A. 112; *Kelley* v. *Von Herberg* (1935), 184 Wash. 165, 50 P. 2d 23.

The record reveals that the monthly charge was $150 per month during the approximately 18-month period in which Mrs. Grow was contemplating entering the retirement home. It is also clear from the record that Mrs. Grow was informed by representatives of the Corporation that the monthly charge would be $150, or in time such rate might be increased five or ten dollars. Notwithstanding the fact that such representations were not of past or existing facts, the trial court specifically found that the Corporation's projected figures indicated that the $150 monthly charge would be adequate at full occupancy, at the time such representations were made. Such finding by the trial court is supported by the record and may not be disturbed on appeal. However, assuming that there was a duty to disclose, there is no evidence that Mrs. Grow relied upon the fact that the $150 monthly charge was the actual cost per person as determined by mathematical computation, and that she was induced to enter into the contract because of her reliance on such fact. "Reliance" is an essential element of actionable fraud. *McClellan* v. *Tobin* (1942), 219 Ind. 563, 570, 39 N. E. 2d 772; *General Electric Co.* v. *Dorr, et al.* (1967), 140 Ind. App. 442, 453, 218 N. E. 2d 158 (transfer denied); *Automobile Underwriters, Inc.* v. *Smith* (1961), 131 Ind. App. 454, 462, 166 N. E. 2d 341 (transfer denied).

Indeed, the conclusion that Mrs. Grow relied upon the $150 monthly charge as being a mathematical computation of total operating costs divided by the number of residents becomes completely untenable in light of the fact that the monthly charge remained at $150 per month for the approximately 18-month period prior to Mrs. Grow's entering, while the number of residents was increasing.

Appellant's second alternative legal principal which is alleged to have created a duty to disclose, *i.e.*, (C) deception which distracts the other party's attention from the real facts, is not supported by the citation of authority. Failure to cite authority in support of an argument is deemed a waiver under Rule 2-17(h),[2] Rules of the Supreme Court of Indiana. *Norton* v. *Cooley* (1970), 146 Ind. App. 514, 257 N. E. 2d 323, 20 Ind. Dec. 700; *In re Disbarment of Holovachka* (1964), 245 Ind. 483, 198 N. E. 2d 381 (Cert. denied, 379 U.S. 974).

Not withstanding that fact, to accept the facts as stated in such argument would require this court to view the evidence in a light most favorable to appellant. The law of Indiana is exactly to the contrary. *A.S.C. Corporation* v. *First Nat. Bank, etc., supra; Souerdike* v. *State, supra; Pokraka* v. *Lummus Co., supra.*

It is the law in Indiana that the failure to disclose all material facts, by a party on whom the law imposes a duty to disclose, constitutes actionable fraud. *Loer* v. *Neal, et al.* (1957), 127 Ind. App. 246, 254, 137 N. E. 2d 728 (transfer denied); *Allen Realty Co.* v. *Uhler* (1925), 83 Ind. App. 103, 107, 146 N. E. 766.

It is equally clear that the burden to show a duty to disclose is upon the party asserting fraudulent concealment. *Anderson Drive-In Theatre* v. *Kirkpatrick* (1953), 123 Ind. App. 388, 110 N. E. 2d 506 (transfer denied); *Pointer* v. *American Oil Company* (D.C.S.D. Ind. 1969), 295 F. Supp. 573, 577.

Inasmuch as appellant has failed to show, as a matter of law, that the Corporation was under a duty to disclose, there is no reversible error shown.

In support of Proposition No. II, *i.e.*, that the trial court erred in finding that all representations made by the Corporation were expressions as to future conditions rather than

2. See: Rule AP. 8.3(A)(7), Indiana Rules of Procedure.

representations of present facts, appellant relies upon paragraph 2.2 (a) of the contract which is as follows:

> *"Amount and Time of Payment.* Each individual Applicant agrees to make monthly payments for his Lifetime Care in the Community, which shall be his prorated share of the cost of all such care as determined by the Board on the basis of audited cost of operation by a certified public accountant. *Auditing and evaluation of such operational cost will be made each six months and adjustment up or down of the monthly Lifetime Care payments are to be made accordingly.* Each monthly payment for Lifetime Care shall be made one month in advance." (Emphasis supplied.)

The trial court found that audits for the purpose of adjustments of the monthly lifetime care payments were not made. As previously stated, the monthly charge was based upon projected figures rather than occupancy while the Corporation was in the "start-up stages." The trial court specifically found that the directors did not believe the first residents should bear the total amount of fixed costs when the Corporation was attempting to obtain its projected occupancy. Further, the trial court found that the $2,845 figure referred to in the letter from Mr. Wood to Mrs. Grow would have taken care of the monthly charge were it not for the increased costs due to the property tax. Such findings are supported by the evidence and will not be disturbed on appeal.

Appellant, in her brief, admits that "[w]hen Mrs. Grow considered entering the retirement home she assumed the risk that the future monthly service charge would increase." The existing facts which Mrs. Grow asserts she relied upon were that the $150 monthly charge was a mathematical computation or at least that the charge was based upon six-month audits. While a finding of such reliance might have been made in the instant case based upon reasonable inferences to be drawn from the evidence, by far the more reasonable conclusion was drawn by the trial court. As

previously stated, implicit within the findings of the trial court is the fact that it was unreasonable for Mrs. Grow to rely upon a mathematical computation (even though the contract does not require one) based upon six-month audits, when the monthly charge remained stable for a period of 18 months while the number of residents was increasing.

The trial court properly found that the Corporation did not fraudulently induce Mrs. Grow to enter into the contract at issue.

Appellant having failed to show reversible error, the judgment of the trial court must be affirmed.

Judgment affirmed.

Sullivan, P. J., Buchanan, Lowdermilk, Robertson, Sharp, Staton and White, JJ. concur.

NOTE.—Reported in 271 N. E. 2d 140.