## KELLY v. THE STATE.

[No. 3,340.   Filed May 17, 1900.]

LIBEL.—*Writing Not Libelous Per Se.*—The following writing. "I guess you think people dont know how you get anything you pretend to pay for it you hand them a piece of money and they pretend to change the money but it all handed back to you you dont pay for thing you get I see that this afternoon I be shamed," is not libelous *per se.   pp. 639, 640.*

SAME.—*Criminal Libel.—Affidavit and Information.—Sufficiency.*— Where it is sought to charge criminal libel by affidavit and information, and the words forming the foundation of the charge are not libelous *per se,* there should be alleged in the inducement such extrinsic facts as would show that the words were used in a libelous sense. *p. 645.*

From the Huntington Circuit Court.   *Reversed.*

*W. A. Mitchell, W. H. Hart, J. F. France* and *Z. T. Dungan,* for appellant.

*W. L. Taylor,* Attorney-General, *C. C. Hadley, Merrill Moores, J. S. Branyan* and *E. Searles,* for State.

WILEY, C. J.—This case was transferred from the Supreme Court. Appellant was prosecuted and convicted for criminal libel, upon affidavit and information. Omitting the formal parts, the affidavit is as follows: "Dora Mikesell, being duly sworn, on her oath says that one Hannah Kelly on the 10th day of February, A. D. 1899, at and in said county and State aforesaid, did then and there, unlawfully, maliciously, and libelously, and with intent to injure and defame affiant, write and publish of and concerning this affiant, Dora Mikesell, the following false, defamatory, and libelous words to wit: 'I gess you think people don't know how you get anything you pretend to pay for it you hand

them a pice of money and they pretend to chaing the money but it all handied Back to you you Dont pay for thing you get i see that this afternoon i Beshamed'—she, the said Hannah Kelly, then and there well knowing that such words and language were written by her and published by her concerning the said Dora Mikesell, were false, defamatory, and libelous, and she, the said Hannah Kelly, in the writing and publication of said letter, then and there and thereby intended to libel and defame this affiant, Dora Mikesell, and intended that the same should be understood by the public to mean that the said Dora Mikesell was a person of lewd life, and was receiving money, goods, and property for illicit intercourse with her by men, and for the purposes of prostitution, and it was so undertsood by the public; and she then and there and thereby intended that the public should read the same, and that thereby this affiant, Dora Mikesell, would be defamed and held in public contempt as a woman of lewd life." The charging part of the information is the same as the affidavit. Appellant moved to quash the affidavit and information, which motion was overruled, and she excepted. This ruling of the court is assigned as error, and is the first question discussed. The State, by the Attorney-General, has not confessed error, but in his brief he conceded that the affidavit and information are insufficient.

The defamatory matter charged is not libelous *per se*, nor is it addressed to any person, nor does it name any person. This being true, it is the rule established by the authorities that, to make good the charge for libel, such intrinsic facts must be alleged by way of inducement, to show the person against whom the charge is made, and also to show that the words published were libelous and published in a libelous sense.

In *Harper* v. *Delp*, 3 Ind. 225, the court say: "It was, no doubt, necessary that the count should show that the words were applicable to the plaintiff. It was for that purpose alone, that the inducement was inserted. If the words

Kelly *v.* State.

are here shown to be so applicable, then this part of the declaration is unobjectionable. In ordinary cases, it is sufficient on this subject to aver, that the words were spoken of and concerning the plaintiff. But we understand the rule to be, where, as in the case before us, there is an ambiguity in the words laid, in regard to the person slandered, there must be an introductory averment showing that the plaintiff was the person aimed at."

In the affidavit and information it is charged that appellant "did then and there, unlawfully, maliciously, and libelously, and with intent to injure and defame affiant, write and publish of and concerning this affiant, Dora Mikesell," etc. There is no allegation of any intrinsic fact showing that Dora Mikesell was the person to whom the alleged defamatory matter was directed, except the naked assertion that the words were written and published of and concerning her. The words used in the communication or writing are harmless in themselves. They do not charge a crime, or impute any libelous misconduct, and, to make them libelous, there should have been alleged in the inducement such extrinsic facts as would show they were used in a libelous sense. It is not enough to set out the words, and then say by innuendo what they are intended to mean. The innuendo can not change the natural meaning of the words. The office of the innuendo is to give to the defamatory words the construction they bear in reference to the extrinsic facts alleged to describe their particular meaning. Colloquialisms and innuendoes are only necessary to remove uncertainty that would otherwise exist as to persons, or the meaning of words and sentences and their application. *Rodebaugh* v. *Hollingsworth*, 6 Ind. 339. But an innuendo can not aver a fact or change the natural meaning of language. This must be done by the inducement. *Hays* v. *Mitchell*, 7 Blackf. 117; *Ward* v. *Colyhan*, 30 Ind. 395; *Hart* v. *Coy*, 40 Ind. 553.

Where the defamatory words are not libelous *per se*, and

are ambiguous or equivocal, then extrinsic matter must be averred to show the objectionable character of the words or language used. *Hart* v. *Coy, supra; Hays* v. *Mitchell, supra; Worth* v. *Butler,* 7 Blackf. 251; *Rodebaugh* v. *Hollingsworth, supra;* Townshend Sl. and Lib. §308.

The rules above stated are forcibly emphasized in the case of *Ward* v. *Colyhan, supra,* in the following language: "The court erred in overruling the demurrer to the second paragraph of the complaint. The words are not actionable *per se;* they could only be made actionable by proper averments. An innuendo can not change the ordinary meaning of language. In the language of Dewey, J., in *Hays* v. *Mitchell,* 7 Blackf. 117, the second paragraph of the complaint 'is not so framed as to make the words stated a good cause of action. Something more than an innuendo was necessary for that purpose. An innuendo can not aver a fact or change the natural meaning of language. There should have been a prefatory allegation of some extrinsic matter, or an explanation of the particular and criminal meaning of the words. This introductory matter having been stated, the *colloquium* should have connected with it the speaking of the words complained of, leaving to the innuendo its proper office of giving to those words that construction which they bore in reference to the extrinsic fact or explanation of their particular meaning.' "

Again, in the case of *Harrison* v. *Manship,* 120 Ind. 43, it was said: "Where words are used, not actionable within themselves, there should be some prefatory allegation of some extrinsic matter, or an explanation of the particular and criminal meaning of the words. This introductory matter having been stated, the colloquium should connect with it the speaking of the words complained of, leaving to the innuendo its proper office of giving those words that construction which they bore in reference to the extrinsic fact, or explanation of their particular meaning. If a crime has been committed, and the words sued for were spoken in reference to it, that matter should be averred. If the de-

Kelly *v.* State.

fendant has been in the practice of using the words to express the commission of a crime, that fact should be alleged. If a word or a phrase has a particular and criminal meaning, different from its ordinary import, and was used in its opprobrius sense by the defendant, those facts should appear. *Hays* v. *Mitchell*, 7 Blackf. 117.

"There is no colloquium or innuendo laid in this complaint. We have simply the words 'he drove off my ducks and sold them', without any averment as to the circumstances under which the words were spoken, or as to the sense in which they were used, or as to how they were understood.

"The simple question, therefore, for our determination, is, do the words charged to have been spoken import the commission of a crime? We do not think they do. The verbs used are 'take', 'drive' and 'sell', all of which in their usual sense denote innocent actions.

"Had the appellant averred any extrinsic facts tending to show the commission of a crime, and had in any manner, by averment, connected the speaking of the words charged in the complaint with the commission of such crime, no matter how defective such averments, the complaint would have been good after verdict; but here, as we have seen, there is a total absence of any averment that a crime had been committed.

"Where the language is susceptible of an innocent and a criminal meaning, the court, after verdict for the plaintiff, upon a motion for a new trial, in arrest of judgment, or upon an assignment of error, will adopt the latter meaning, and where the language is rendered actionable by extrinsic circumstances defectively averred, the verdict will aid them; but language not actionable *per se*, in the absence of extrinsic circumstances, will not be so regarded, even after verdict."

In *McFadin* v. *David*, 78 Ind. 445, at page 446, 41 Am. Rep. 587, we find this language: "The words spoken were not actionable *per se*. They do not, in their usual sense, either import a charge of murder or of manslaughter. They

do not amount to a charge that death ensued from the administration of the morphine, or that it was administered either improperly or feloniously. Indeed, it does not appear that any harm resulted from its administration. It is true that it is stated by the innuendo that the defendant meant, by the language spoken, that the plaintiff had caused the death of Noah McFadin by the unlawful administration of poison, but an innuendo can not enlarge the meaning of words. If the words themselves do not warrant the signification imputed to them, an innuendo can not. Words not actionable *per se* can not be rendered so by innuendo. 'The absence of a colloquium, showing by extrinsic matter that the words charged are actionable, is not supplied by an innuendo attributing to those words a meaning which renders them actionable.'

"Treating the paragraph in question as unaided by the averment of extrinsic facts, the innuendo can not supply a meaning that the words themselves do not warrant. Taken in their usual and ordinary sense, they do not charge that the plaintiff caused the death of Noah McFadin by the administration of morphine or otherwise, and as they do not they are not actionable *per se*. Unless they constitute such charge, they impute no crime to the plaintiff."

In the case of *Emig* v. *Daum*, 1 Ind. App. 146, it was held that the words "we had a fire in our neighborhood last night. Lu Daum's barn burnt. I don't know anything, but the report is that Mary Daum burnt the barn," were not actionable, without an allegation of some extraneous facts giving them a slanderous meaning, and a colloquium to connect them with such facts. In the same case it was held that the words, "It is the opinion of the people that Mary Daum burnt the barn, and it is mine," were not actionable without an allegation of extrinsic facts showing that the barn spoken of was the property of another; and was worth $20 or more. In that case many authorities are collected, and we refer to it without further comment.

_ By referring to the language used in the affidavit before us, it will be observed it does not charge any person with any crime, or of any degrading or infamous act, or any female with a want of chastity. Neither is there anything in the language as to who is meant by the writing. From the language itself, neither the public, nor any one person, could determine what was meant, or for whom it was intended, or to whom it referred. To make the affidavit good, as the language used is not in itself libelous, it was necessary in the prefatory or introductory part to show its libelous character by averring extrinsic facts, and to connect appellant with such facts by proper colloquium or innuendo. Failing in this, under the authorities, we must hold that the affidavit and information are insufficient, and the court erred in overruling the motion to quash. This conclusion makes it unnecessary to dispose of other questions presented.

The judgment is reversed, and the court below is directed to grant appellant a new trial, and to sustain her motion to quash the affidavit and information.