FIDELITY AND CASUALTY COMPANY OF NEW YORK *v.* STATE EX REL. McWHIR.

[No. 16,325. Filed March 4, 1941. Rehearing denied December 5, 1941. Transfer denied February 25, 1942.]

*George C. Forrey, III,* and *White, Wright & Boleman,* all of Indianapolis, and *Christian & Waltz,* of Noblesville, for appellant.

*Cloe, Campbell & Cloe,* of Noblesville, and *Oscar F. Smith* and *John J. Gould,* both of Indianapolis, for appellee.

CURTIS, C. J.—This was an action brought by the State of Indiana, on the relation of Hazel McWhir, appellee, growing out of an alleged transaction between the relatrix and Investment Management, Inc., for which the appellant as surety executed a "Blue Sky Bond." Appellee's complaint seeks the return of certain securities which Investment Management, Inc., allegedly held in trust for the relatrix, or, in the alternative, damages, together with costs and reasonable attorneys' fees, and seeks to hold the appellant liable on the aforesaid "Blue Sky Bond."

The issues were formed by the appellee's complaint in one paragraph, which charged that Investment Management, Inc., was organized in 1932, as a dealer in securities; that on August 29, 1932, Investment Management, Inc., obtained a license as a securities dealer from the State of Indiana and filed a "Blue Sky Bond" with this appellant as surety thereon; that Howard N. Simms was president, Nathan T. Washburn, Jr., was secretary-treasurer, and Robert H. Bryson and John C. Connan "were directors and/or agents of Investment Management, Inc."; (These persons were named as defendants in the trial court) ; that on August 26, 1932, the relatrix was induced by Investment Management, Inc., as part of the issue and sale of its capital stock, to exchange certain securities she owned for certain shares of Investment Management, Inc., which were not registered or qualified by the Indiana Securities Commission, such exchange being made with the understanding that if Investment Management, Inc., be not operated on a paying basis the stock originally owned by the relatrix would be returned to her; that

Investment Management, Inc., never was operated on a paying basis, and in December of 1932, was declared insolvent and a receiver was appointed; that within two years from the aforesaid exchange, the relatrix elected to void the exchange and that she tendered back the securities she had received and demanded the securities she had given or the equivalent thereof in money, which tender and demand were refused.

No service was obtained on the defendant Howard N. Simms. The defendants Nathan T. Washburn, Jr., Robert H. Bryson, and John C. Connan, though served, did not plead. The action was eventually dismissed as to Howard N. Simms.

The defendant Fidelity and Casualty Company of New York, appellant herein, filed a motion to require the plaintiff to separate its several causes of action stated in the complaint into separate and distinct actions and to docket them as such, which motion was overruled. A demurrer to the complaint was then filed by the appellant and overruled, after which it filed a general denial to the complaint.

There was a trial by jury resulting in a verdict for the appellee and against the appellant, Fidelity and Casualty Company of New York, and John C. Connan, for $1,195.00 and costs. The defendants, Nathan T. Washburn, Jr., and Robert H. Bryson, recovered a directed verdict in their favor. Judgment was duly entered in accordance with the verdict.

The errors relied upon for reversal are, separately, the overruling of the appellant's motion to separate the complaint into separate actions and to docket them as such, the overruling of the appellant's objection to appellee's demand for a trial by jury, the overruling of the appellant's demurrer to the complaint, and the

overruling of the appellant's motion for a new trial, to each of which rulings the appellant at the time excepted.

The complaint in substance alleges that in the year 1932, Investment Management, Inc. was organized under the laws of the State of Indiana for the purpose, among other things, of dealing in various securities; that on or about the 29th day of August, 1932, it applied to the Securities Commission of Indiana and was granted a dealer's license and that with such application it filed a bond with the appellant as surety in the sum of $5,000.00 conditioned upon the faithful compliance with the so-called "Blue Sky Law" of this State. (The bond ran to the State of Indiana.) Continuing the complaint alleged:

"That on or about the 26th day of August, 1932, the relatrix was the owner of certificates of stock in the Railroadmen's building and Savings Association of Indianapolis, representing six hundred ($600.00) dollars par value, together with accumulated dividends thereon; that on or about the 26th day of August, 1932, said corporation by and through its officers and directors and agents, as part of the issue and sale of its capital stock, induced the relatrix to exchange said Building and Savings stock for Certificate No. 11 representing twenty-four (24) shares of Class B stock of said corporation, and for certificate No. 3 representing twelve (12) shares of Class A. stock of said corporation, when neither of said classes of stock were registered or qualified by the Indiana Securities Commission as required by law, and said exchange was made by this relatrix with the distinct understanding and representation that said corporation would hold said Building and Savings stock in trust for said relatrix until such time as said Investment Management, Inc., was being operated on a paying basis, and, in event said Investment Management, Inc., was not placed upon such paying basis, said stock in said association would be returned to said relatrix.

"That as a matter of fact said Investment Management, Inc., never was operated upon a paying

basis, and in December, 1932, it was declared insolvent and a receiver therefor was appointed.

"That in compliance with section 5024, Burns' 1926, this relatrix, within a period of two years from such exchange, has elected to void the sale or exchange because it was made in violation of the provisions of said 'Blue Sky Law' in that said stock was never registered or qualified as required by law; and that she has made a tender back of the securities so received through said exchange and has demanded the return of the purchase price, viz., her stock in said Railroadmen's Building and Savings Association or the equivalent thereof in lawful money, which tender and demand have been refused; that said relatrix has not refused or failed at any time to accept any voluntary offer of the defendants or any of them to take back the securities in question and to refund the full amount paid by said relatrix together with interest."

The prayer of the complaint was "for the return of the purchase price, to wit, Railroadmen's Building and Savings Association stock in the par amount of six hundred ($600.00) dollars and/or damages in the amount of six hundred (600.00) dollars, together with interest and costs and reasonable attorney's fees."

As an exhibit to the complaint, there was filed a copy of said "Blue Sky Bond" conditioned as follows:

"THE CONDITION OF THIS OBLIGATION IS SUCH, That whereas, Investment Management, Inc., of Indianapolis, Indiana, has been registered by the Securities Commission of the State of Indiana, as a dealer in stocks, stock certificates, bonds, debentures, collateral trust certificates and other securities, for the term ending December 31, 1932.

"NOW THEREFORE, if the said Investment Management, Inc., shall faithfully observe the provisions of 'AN ACT defining securities, and supervising and regulating the disposition, sale, offer for sale, negotiations or exchange thereof in the State of Indiana, providing penalties for the violation of the act, creating a Securities Commission in the State of Indiana, defining its powers and

function, providing for the administration of the act, and repealing all laws not consistent or in conflict therewith,' and shall indemnify and save harmless any purchaser of such securities who suffers loss by reason of misrepresentations in the sale of such securities by Investment Management, Inc., as such dealer, or from any agent of said Investment Management, Inc., then this obligation shall be void; otherwise it shall remain in full force and effect in law."

The said bond was signed and sealed on the 29th day of August, 1932, and approved by the Indiana Commissioner of Securities.

In disposing of two preliminary matters, we may say first, that the bond in question by its terms provided for a joint and several liability and we see no reversible error in the ruling refusing to require the appellee to separate her causes of action. See *Pittsburgh, etc., R. Co.* v. *Rushton* (1929), 90 Ind. App. 227, 148 N. E. 337, 149 N. E. 652. Secondly, there could be no doubt but that the case was triable by a jury and the appellant's objection to that form of trial has no merit.

The demurrer to the complaint raises several questions. One is, that since the bond runs to the State of Indiana, the appellee has no right to bring this cause of action. Where bonds, such as the one in the instant case, are required by the statute to run to the State, the rule is that action is properly brought in the name of the State of Indiana on the relation of the person or persons who sustain the damage covered by the bond. See, *Massachusetts, etc., Ins. Co.* v. *State, ex rel.* (1922), 191 Ind. 595, 131 N. E. 398, and cases cited therein. There is, therefore, no merit in this first contention of the demurrer. The serious question

raised by the demurrer is that the complaint shows upon its face that the transaction of which the appellee complains was made on the 26th day of August 1932, and the bond in question was not given until 3 days later, to wit August 29, 1932. There is nothing in the bond to indicate that its purpose was to cover transactions made previously to its date. On questions of demurrer on appeal, the rule has been well and clearly stated by Judge McMahan in *Pittsburgh, etc., R. Co.* v. *Rushton, supra,* as follows (90 Ind. App. at 237) :

> "In determining whether a pleading is sufficient to withstand a demurrer, we must look solely to the allegations of the pleading. We cannot look to the evidence for that purpose. But when a cause has been appealed to this court after trial, and where the evidence is in the record, we are required to do more than decide that the action of the court in overruling a demurrer was error. We must then determine whether, in view of the whole record, the ruling, though erroneous, was prejudicial to the adverse party. In deciding this question, we may look to the evidence, and to other parts of the record, and, if it affirmatively appears from the whole record that the erroneous ruling did not prejudice the adverse party and that the case was fairly tried and determined on its merits, it is our duty to affirm regardless of such error"

But when the whole record in the instant case is carefully examined, it becomes apparent that the ruling on the demurrer was not only erroneous but that the case was not fairly determined on the merits.

The allegations of the complaint show that the transaction of which the appellee complains was fully consummated at least three days before the bond sued upon was given. The relatrix (appellee) in her brief says that there was some evidence that the transaction extended in its consummation over to the next day after the bond was given. The evidence pointed out, however,

does not warrant any such conclusions. She testified that the defendant Simms told her on the said 26th day of August, 1932, that "he would hold my certificates until the company was on a paying basis and that I would receive my interest from the Railroadmen's Building and Loan the first of the year just the same as if I had not exchanged them." She next says that contrary to that agreement he sold the said stock on September 1, 1932, two days after the bond was given. This evidence when considered with all of the other evidence conclusively establishes the fact that the deal of the relatrix was a fully consummated deal on the 26th day of August, 1932. The record, without conflict, shows that the breach was of a contract fully and finally consummated before the bond was executed. We do not think that under such circumstances the bond can reasonably be held to cover the previous transaction. The appellee cites the case of *Wagner* v. *Kelso* (1923), 195 Iowa 959, 193 N. W. 1, but the question before us was not before that court. That case did not hold that a "Blue Sky Bond" relates back and covers a transaction consummated before the bond was given. What was held in that case was that a stockbroker's refusal to repurchase stock sold by him to a purchaser when there was an agreement by the parties for such repurchase if the buyer became dissatisfied with the deal and demanded such repurchase within the time agreed upon between him and the stockbroker, amounted to a default in a matter appertaining to the stockbroker's business and that a Blue Sky bond covers such a default rendering the surety on the bond liable to said buyer for the damages flowing out of said default. But there is nothing in that case to indicate that the court was there considering the breach of an agreement made before the bond was given, such as we have in the.

instant case. The case is, therefore, not in point and gives no aid to the appellee.

We pass now to the motion for a new trial which contains many causes or grounds, among which is the ground that the verdict of the jury is not sustained by sufficient evidence. The evidence without contradiction shows that the stock exchanged by Simms to the relatrix was his personal stock; that the stock of the relatrix in the said building and loan association was assigned by her to Simms; that when Simms sold said building and loan stock he received all of the money coming out of such sale and that the Investment Management, Inc., never received any part of said money. There is nothing in the evidence from which any ligitimate conclusion or inference can be reached that the relatrix ever had any dealing with the said Investment Management, Inc. The verdict against the appellant herein as the surety for the Investment Management, Inc., is therefore not sustained by sufficient evidence. It becomes unnecessary to consider the other causes or grounds of the appellant's motion for a new trial.

This court on the 23rd day of March, 1939, overruled the appellee's motion to dismiss this appeal. The appellee in the argument of this case and in her brief has challenged that ruling. The motion is based upon alleged failure to make proper and necessary parties in this court. We have re-examined that question and find no reason to change the ruling. See: *Van Nuys* v. *Union Ins. Co.* (1940), 108 Ind. App. 294, 25 N. E. (2d) 280; *Southern R. Co.* v. *Elliott* (1908), 170 Ind. 273, 82 N. E. 1051; *Easter* v. *Severin* (1881), 78 Ind. 540; *Lowe* v. *Turpie* (1897), 147 Ind. 652, 44 N. E. 25, 47 N. E. 150; *Second Nat. Bank of Robinson, Ill.* v. *Scudder* (1937), 212 Ind. 283, 6 N. E. (2d) 955.

This court is not interested in this appeal with any cause of action the relatrix might have against Simms. She made him a party defendant in the court below, but failed to get service upon him, and eventually dismissed as to him.

The judgment is reversed with instructions to the trial court to set aside its judgment and to sustain the motion for a new trial.

NOTE.—Reported in 32 N. E. (2d) 102.