NORTON AND GROUB D/B/A THE JAY C. STORE *v.* COOLEY.

[No. 569A80. Filed April 15, 1970.]

*Goltra, Cline & King,* Columbus, for appellants.

G. *Herbert Packwood,* Columbus, for appellee.

HOFFMAN, P.J.—Defendants-appellants appeal from a judgment for libel rendered against them by the trial court, without the intervention of a jury.

The facts most favorable to appellee are as follows:

In May, 1963, appellee purchased from The Jay C. Store in Columbus, Indiana, supplies for the garage and service station and a small restaurant which he owned and operated. Appellee generally paid for such supplies in cash, but on this one occasion he endorsed over to appellant-Store a personal check to appellee in the amount of $50. Appellee had received the check from one William Seitz in payment of rent.

In due course, the store presented the check for payment at the Nashville State Bank and it was returned unpaid by reason of insufficient funds in the account of Mr. Seitz.

Shortly thereafter, appellee heard rumors that The Jay C. Store would no longer accept his checks, and accordingly he "went in to see why." In June of 1963 appellee talked with appellant-Jack Norton, manager of the store. After some discussion, appellee agreed to pay the amount due himself if Mr. Seitz did not cover it within two weeks.

During early October, 1963, appellee attempted to purchase a drum of oil from a service station operated by one Marshall Palmer. He offered a check in payment and Mr. Palmer refused to accept the check. Upon direct examination this witness testified that, "He [appellee] wanted to make me out a check for $20.40 for a barrel of oil and I told him I couldn't take it because I had seen his name on the list at the Jay C. Store."

Appellee went immediately to appellant-Store. There he discovered cardboard signs attached to the customer's checkout side of each of the three cash registers which read as follows:

"Our cashiers have been instructed not to accept checks on the following . . . ."

Appellee's name appeared among those posted on the sign. The signs were clearly visible to customers of the store using the check-out lines. The words were printed in one-inch high letters and were easily readable. At that time appellee again spoke with Mr. Norton and, in fact, paid for the check written by Mr. Seitz. Mr. Norton then took a pencil and drew lines through appellee's name on each of the signs.

A number of persons testified at the trial that they had seen the signs and assumed that appellee had written a bad check.

Appellee filed his complaint alleging that he had been libeled by defendants-appellants. Appellants separately demurred alleging that the words were not libelous *per se* and, therefore, that plaintiff would have to allege inducement and colloquium. The demurrers were overruled.

Trial was to the court, without the intervention of a jury.

On the 27th day of November, 1968, the court entered finding in favor of appellee on his complaint and awarded him damages in the sum of $1,500.

Appellants assign as error 1) the overruling of their motion for a new trial, and 2) the overruling of their demurrers.

The motion for a new trial contains seven specifications of errors:

1. That the court erred in overruling appellants' demurrers;

2 and 3. That the decision of the trial court is not sustained by sufficient evidence and is contrary to law;

4. That the court erred in permitting hearsay evidence to be admitted into the record over an objection of appellants;[1]

---

1. "Q. What did Mr. Hedrick say to you about this check?
"OBJECTION BY MR. CLINE TO STATEMENTS MADE BY PERSONS NOT PARTIES TO THIS LAW SUIT,

5. The court erred in overruling defendants-appellants' motion for finding in their favor at the close of plaintiff-appellee's evidence; and

6. and 7. That the damages assessed are excessive and the court erred in the assessment of the amount of recovery in that it was too large.

Appellants have not discussed the alleged error raised in Specification 5 in the argument section of their brief as required by Rule 2-17(h), Rules of the Supreme Court of Indiana, and such error is, therefore, waived.

We shall consider the specifications of error which are discussed in appellants' brief.

The main thrust of appellants' argument is directed to the complaint and the allegations contained therein.

Appellants correctly argue that where the alleged defamatory words are not actionable *per se,* then the complaint must contain allegations of *inducement, colloquium* and *innuendo. Hamilton* v. *Lowery* (1903), 33 Ind. App. 184, 71 N. E. 54; *Kelly* v. *State* (1900), 24 Ind. App. 639, 57 N. E. 257. See also: 18 I.L.E., *Libel and Slander,* § 82, p. 487.

This argument raises our first question—were the words libelous *per se?*

In *Gibson* v. *Kincaid, et al.,* 140 Ind. App. 186, 196, 221 N. E. 2d 834, 840 (1967), (Transfer denied), in a concurring opinion by Judge Faulconer, an extensive and exhaustive review was made of the law of defamation with particular reference to applicable Indiana cases. While conceding that there is no specific case holding on the point here in issue,

MADE OUTSIDE OF THE HEARING OF THE DEFENDANT.

"RULING OF COURT: OBJECTION IS OVERRULED.

"Q. You may state your conversation with Mr. Hedrick? [.]

"A. I went to C P on occasion where I was formerly employed and Floyd Hedrick said 'I see you are putting out bad checks' and at this time I already knew about the Jay C Store and I told him that's all been taken care of and the subject was dropped at that time."

Judge Faulconer stated that, "Indiana applies the distinction between words defamatory *per se* or *per quod* to the tort of defamation." (Pages 205-206 of 140 Ind. App., page 845 of 221 N. E. 2d.) Further, at page 201 of 140 Ind. App., page 843 of 221 N. E. 2d, he stated that:

> "It is generally agreed that words are actionable without allegation and proof of special damage when:
>
> "(1) Words, whether they be in the form of libel or slander, which are defamatory *per se* or *per quod*, which (a) impute to another the commission of an indictable offense punishable by imprisonment; (b) impute to another a loathsome disease; (c) tend to injure another in his office, profession, trade, business or calling; or (d) impute unchastity to a woman.
>
> "(2) Words in the form of libel which, on their face, without resort to extrinsic facts or circumstances, that is to say, '*per se*' tend to degrade another person, impeach his honesty, integrity, or reputation, or bring him into contempt, hatred, ridicule, or causes him to be shunned or avoided."

If the words complained of fall into the first category above, then plaintiff-appellee must aver such extrinsic facts as are necessary to establish the libel.

> "These averments must be distinctly stated in the *inducement*, applied to the plaintiff by a proper *colloquium*, with the intended and understood meaning correctly set out in the *innuendoes*." (Emphasis supplied.) *Works* v. *Stevens*, 76 Ind. 181, 184 (1881).

The words here complained of are not libelous *per se;* they are libelous *per quod*. We have reviewed the complaint and it makes the proper averments, inducements, colloquium and innuendo. There was no error in the ruling on the demurrers.

Further, our review of the evidence most favorable to the appellee establishes that there was sufficient evidence to support the allegations of the complaint and to establish the libel. A number of witnesses testified that after reading the signs in The Jay C. Store, they held the belief that appellee had "passed a bad check."

It was unnecessary to allege and prove special damages inasmuch as the innuendo proved was that of an indictable offense.

It appears from the brief of appellants that the arguments raised by Specifications 1 and 6 have been stated but are not supported by argument. On the "hearsay" issue, appellants simply state at page 79 of their brief:

"This was hearsay evidence in its worst form and it was error to permit it at the trial."

There is no precedent cited for this proposition nor is there any argument made on the language. Likewise, the argument relative to the *excessive damages* issue is barren of any useful precedent. Any error presented by these issues is deemed waived for failure to comply with Rule 2-17 (h), Rules of the Supreme Court of Indiana.

We are constrained to point out that the libel complained of in the instant case is, or may be, of a particularly destructive nature. This is so because it attacks and impugns the credit-standing of the individual named. In a society such as ours, an individual's credit-standing is one of his most cherished assets. The words complained of here certainly gave rise to the imputation of criminal activity—passing bad checks—but it went much further. The inferences which arise are all negative and are all in derogation of the named individual's financial standing and personal integrity — not virtues to be lightly taken.

There was no error in the decision of the trial court and, therefore, the judgment must be affirmed.

Judgment affirmed.

Pfaff and Sharp, JJ., concur. White, J., concurs with opinion.

### CONCURRING OPINION

WHITE, J.—The evidence most favorable to appellee as correctly summarized in the opinion by Presiding Justice

Hoffman is sufficient to prove that plaintiff-appellee was libeled and thereby damaged to such an extent that the sum awarded to him is not excessive. Therefore, I am happy to concur.

My only purpose in writing this opinion is to make it clear that even if the complaint had not made "the proper averments, inducement, colloquium and innuendo", we would not have reversed for error in overruling the demurrer to the complaint.

Burns Ind. Stat. Ann. (1968 Repl.) § 2-1013 provides, *inter alia*, that "no objection taken by demurrer and overruled, shall be sufficient to reverse the judgment, if it appears from the whole record that the merits of the cause have been fairly determined." § 2-3231 provides, in part, that "[n]o judgment shall be . . . reversed . . . for any defect . . . contained in the . . . pleadings . . . which by law might be amended by the court below, but such defects shall be deemed amended in the Supreme Court . . ."[1] § 2-1068 contains this language: "After trial and before final judgment, the court may, in its discretion and upon such terms as may be deemed proper for the furtherance of justice, order that any pleading be amended by . . . inserting, striking out, or modifying any material allegation in order that the pleadings may conform to the facts proved, where the amendment will not deprive a party of any substantial right."[2]

---

1. The new rules have adopted this statute verbatim except to replace "Supreme Court" with "court on appeal." AP 15 (D).

2. Other amendment statutes are:
   "2-1063 [418]. Variance, when immaterial—Procedure when party misled.—No variance, between the allegations in a pleading and the proof, is to be deemed material, unless it have actually mislead the adverse party to his prejudice in maintaining his action or defense upon the merits. Whenever it is alleged that a party has been so misled, that fact must be proved to the satisfaction of the court, and it must be shown in what respect he has been misled, and, thereupon, the court may order the pleading to be amended on such terms as may be just." [Acts 1881 (Spec. Sess.), ch. 38, § 130, p. 240.]
   "2-1064 [419.] Variance immaterial—Action of court.—Where the variance is not material, as provided in the last section, the court may direct the fact to be found according to the evidence, or may order an immediate amendment without costs." [Acts 1881 (Spec. Sess.), ch. 38, § 131, p. 240.]

These statutes were generally ignored by the Supreme and Appellate Courts prior to about 1912 in appeals in which the overruling of a demurrer to a complaint was assigned as error.[3] It is now the law, however, that a judgment will not be reversed merely because a proper demurrer to an insufficient complaint was overruled. In *Lane* v. *Gugsell* (1943), 113 Ind. App. 676, 682, 47 N. E. 2d 835, we said:

> "We are asked to reverse because of alleged error in overruling the demurrer to the separate paragraphs of the complaint, but we do not find it necessary to decide the correctness of that ruling. We are not required to make our examination of the record in such a case as this so searchingly technical, if fairly sustainable, as to overthrow a just judgment against an officer of the court who has become enmeshed in a net of his own weaving. *Clark* v. *Millsap* (1926), 197 Cal. 765, 242 P. 918. Our statute (§ 2-3231, Burns' 1933) provides that no judgment shall be stayed or reversed, in whole or in part, where it shall appear to the court that the merits of the cause have been fairly tried and determined in the court below.
>
> "When, on appeal, it affirmatively appears from the whole record, as it appears here, that a ruling on a demurrer, though erroneous, did not prejudice the adverse party, and that the case was fairly tried and determined on its merits, it is our duty to affirm regardless of such error. *Pittsburgh, Cincinnati, Chicago and St. Louis Railroad Company* v. *Rushton* (1929), 90 Ind. App. 227, 148 N. E. 337, 149 N. E. 652."

Seventeen days after denying transfer in *Lane* v. *Gugsell,* *supra,* the Indiana Supreme Court handed down its own opinion in a similar case. In *Bedwell* v. *Debolt* (1943), 221 Ind. 600, 50 N. E. 2d 875, the court did not waste either time or effort in first deciding whether error was committed by the trial court in overruling the demurrer. It merely said:

> "Before we would be justified in reversing the judgment for error in overruling the demurrer, we would have to

---

3. Amendments made in 1911 to the statutes which are now Burns (1967 Repl.) §§ 2-1007 and 2-1011 may be partially responsible for the change in judicial attitude. See *Prudential Ins. Co.* v. *Ritchey* (1918), 188 Ind. 157, 162, 119 N. E. 484, for an instructive discourse on the effect of demurring or of failing to demur to a complaint.

determine from the whole record that the appellant was prejudiced thereby. § 2-3231, Burns' 1933, § 505, Baldwin's 1934. There is evidence in the record, which was admitted without objection, to the effect that the appellant was warned of the danger which confronted him by the other occupants of the automobile in time sufficient to have avoided the accident, but that he made no effort to stop the automobile or reduce its speed. These facts must be considered with those alleged in the amended complaint in determining whether the appellant was harmed by the ruling on his demurrer. *Pittsburgh, etc., R. Co.* v. *Rushton* (1929), 90 Ind. App. 227, 148 N. E. 337, 149 N. E. 652. *Fidelity & Cas. Co. of N. Y.* v. *State ex rel. McWhir* (1942), 110 Ind. App. 507, 32 N. E. (2d) 102. The complaint might have been amended after trial to conform to the proof." (221 Ind. at 604.)

While the approach and the language differs from case to case, the net effect of all the decisions in point since 1911 is that after a trial and decision or verdict for plaintiff the overruling of defendant's demurrer to the complaint is moot. Which is not to say that questions of law raised by the demurrer for want of facts may not survive the trial and be presented on appeal.[4] In the case at bar the sufficiency of the evidence to sustain the court's decision is questioned by the motion for new trial. To the extent that the evidence is insufficient to prove ultimate facts claimed in the demurrer to be material facts, the objections taken by demurrer survive as questions of law. Neither the overruling of a good demurrer nor a failure to demur will authorize a recovery by a plaintiff on proof of less than all the facts material to his cause of action.[5] The one and only crucial question in this

---

4. It is also possible that a defendant who relies on the allegations of the complaint (to which he has unsuccessfully demurred) to limit the admissibility of evidence may be surprised and unprepared to refute evidence admitted over his objection. If he is then denied a continuance it may be said "that the merits of the cause have [*not*] been fairly tried" and that the defendant has been "deprived of his substantial rights" by a plaintiff's verdict which can be affirmed only by considering the complaint amended to conform to that evidence.

5. *Prudential Ins. Co.* v. *Ritchey* (1918), 188 Ind. 157, 162, 119 N. E. 484, cited *supra* in note 3.

appeal is whether the evidence is sufficient to sustain the plaintiff's burden of proof. Discussion of the sufficiency of the allegations of the complaint is helpful only insofar as it *aids* in determining what that burden is.

NOTE.—Reported in 257 N. E. 2d 323.