**GIBRALTAR MUTUAL INSURANCE COMPANY, Appellant (Plaintiff Below),**

v.

**HOOSIER INSURANCE COMPANY and John V. Loudermilk, Appellees (Defendants Below).**

**No. 2–484–A–115.**

Court of Appeals of Indiana, Second District.

Dec. 11, 1985.

Charles S. Gleason, Gleason, Hay & Gleason, Indianapolis, for appellant.

Stephen M. Gentry, Frank J. Otte, Indianapolis, for appellees.

SULLIVAN, Judge.

Gibraltar Mutual Insurance Company ("Gibraltar") filed its complaint on August 13, 1982, alleging that Hoosier Insurance Company, through John V. Loudermilk ("Hoosier" and "Loudermilk", respectively), knowingly and maliciously disseminated false and derogatory information about Gibraltar. Hoosier and Loudermilk asserted affirmative defenses of truth and privilege to the charge of libel. After argu-

ment by the parties, the trial court granted summary judgment in favor of Hoosier and Loudermilk, without an accompanying statement of reasons.[1]

■ Gibraltar appeals and presents the following issues for review.

(1) Whether the trial court's grant of judgment to Hoosier and Loudermilk is contrary to law.[2]

(2) Whether the trial judge was required to disqualify himself because of his pre-existing bias and prejudice against Gibraltar.

Our standard of review on appeal from summary judgment is well established. We ascertain

"whether the pleadings, affidavits, answers to interrogatories, responses to requests for admission, and depositions, when read in the light most favorable to the non-moving party, reveal any genuine issues of material fact, *Henderlong Lumber Co., Inc. v. Zinn* (4th Dist.1980) Ind.App., 406 N.E.2d 310, and if not, whether the trial court correctly applied the law. *State ex rel. Van Buskirk v. Wayne Township* (4th Dist.1981) Ind. App., 418 N.E.2d 234."

*Shallenberger v. Scoggins-Tomlinson, Inc.* (1982) 2d Dist.Ind.App., 439 N.E.2d 699, 703. A material fact is one which facilitates resolution of any of the issues involved. *Brandon v. State* (1976) 264 Ind. 177, 180, 340 N.E.2d 756, 758. "On the other hand, despite conflicting facts and inferences on some elements of a claim, summary judgment may be proper where

---

1. The "judgment" consists of a record entry to the effect that "Motion of defendants' [sic] for summary judgment is sustained. Judgment for defendants against plaintiff." Record at 229. For future reference, we note that although Ind. Rules of Procedure, Trial Rule 56 does not require that the trial court specifically state the legal basis underlying the summary judgment, "it would be an aid to appellate review if such procedure were followed[.]" *Shallenberger v. Scoggins-Tomlinson, Inc., supra* at 703. Further, "if review is frustrated by the lack of a statement of reasons because the legal basis for summary judgment is not apparent from the record, we may remand to the trial court for such a statement." *Id., citing Ahnert v. Wild-*

*man* (1978) 2d Dist., 176 Ind.App. 630, 376 N.E.2d 1182.

2. Gibraltar also asserts that it was entitled to judgment as a matter of law upon its Motion for Summary Judgment. Gibraltar's argument in this regard is merely an incorporation by reference of its argument against the judgment entered for Hoosier and Loudermilk. A party's entitlement to summary judgment is not determined by the lack of success of the adverse party in seeking the same relief. The existence of a genuine issue as to a material fact is the controlling factor. Trial Rule 56(C). Accordingly, the ruling upon Gibraltar's Motion for Summary Judgment is not before us.

there is no dispute or conflict regarding a fact that is dispositive of the litigation." *Letson v. Lowmaster* (1976) 3d Dist., 168 Ind.App. 159, 161, 341 N.E.2d 785, 787. *Accord, Norman v. Turkey Run Community School Corp.* (1980) 274 Ind. 310, 312, 411 N.E.2d 614, 615; *Hayes v. Second National Bank of Richmond* (1978) 1st Dist., 176 Ind.App. 299, 375 N.E.2d 647.

The operative facts are not in dispute: Hoosier, through Loudermilk, directed a letter to the Indiana Guaranty Association[3] with copies to Charles E. Evans, Gibraltar's president, and to W. Rudolph Steckler, Evans' counsel in a separate law suit.[4] With the letter, Loudermilk enclosed Gibraltar's financial statement which reflected a surplus of $55,034. The record reflects that the financial statement is a matter of public record and Gibraltar does not dispute the accuracy of the surplus amount. In the letter, Loudermilk also alleged that Gibraltar was not in compliance with Ind. Code 27-1-6-15 (Burns Code Ed.Supp. 1985), which requires a surplus of $250,000, and exhorted the Guaranty Association to take corrective action to require Gibraltar either to augment its surplus to the statutory level or be precluded from writing insurance in Indiana. Finally, the letter stated that the Guaranty Association, of which both Gibraltar and Hoosier are members, had recently made substantial payments on behalf of insolvent member insurers. The letter formed the basis of Gibraltar's complaint against Hoosier and Loudermilk.

■ It is appropriate at this juncture to briefly describe the function of the Guaranty Association. The Guaranty Association was created for the purpose of protecting the policyholders of impaired or insolvent insurers. *See generally* I.C. 27-8-8-5 and *Foremost Life Insurance Co. v. Department of Insurance* (1980) 274 Ind. 181, 409 N.E.2d 1092. An insurer seeking to transact insurance in Indiana must become a member of the Guaranty Association. I.C. 27-8-8-3. Upon determination by the Commissioner of Insurance that an insurer is impaired or insolvent,[5] the Guaranty Association may, *inter alia,* (a) guarantee or reinsure covered policies of the impaired or insolvent insurer, (b) assume that insurer's contractual obligations, or (c) lend money to the insurer. I.C. 27-8-8-5. The cost of administering this protection is assessed against member insurers in proportionate shares. I.C. 27-8-8-6. Upon a majority vote of its board of directors, the Guaranty Association must notify the commissioner of potential impairments or insolvencies, and may request that the commissioner conduct an investigation of the insurer believed to be impaired or insolvent. I.C. 27-8-8-9(e), (f) and (g). The Guaranty Association has broad powers to implement its statutory duties and obligations, subject to the immediate supervision of the Commissioner of Insurance. We recognize that remedial authority with respect to inadequate surplus accounts is vested in the Department of Insurance. *See* I.C. 27-1-3-19 (Burns Code Ed.Supp.1985), which provides:

"Whenever it shall appear to the department ... (2) That the capital or the surplus fund of any such insurance company is impaired or has been reduced below the amount required by law ... the department is hereby authorized ... to require [the insurer] to restore any impairment of its capital or surplus fund[.]"

However, in light of the preceding discussion, we disagree with Gibraltar's assertion that only the Commissioner of Insurance

---

**3.** Indiana Life and Health Insurance Guaranty Association, created under I.C. 27-8-8-3 (Burns Code Ed.Supp.1985).

**4.** Steckler represents Evans, Keith Bruner, and Argus Marketing in an unresolved breach of contract action against Hoosier and Loudermilk.

**5.** I.C. 27-8-8-2 defines "impaired" and "insolvent" as follows:

" 'Impaired insurer' means a member insurer deemed by the commissioner to be potentially unable to fulfill its contractual obligations. 'Insolvent insurer' means a member insurer who becomes insolvent and is placed under a final order of liquidation, rehabilitation or conservation by a court."

may act in matters concerning Indiana insurers.

The questions before the trial court, and us, are whether Hoosier's letter was libelous and, if so, whether the publication of the letter exceeded the scope of any privilege.[6]

Gibraltar advances alternative arguments in support of its contention that summary judgment was unwarranted. Gibraltar first argues that it is not subject to I.C. 27–1–6–15, *supra*, and that Loudermilk's letter was a false and malicious attempt to coerce settlement of the separate litigation hereinbefore mentioned. Gibraltar also argues that even if the contents of the letter are true, dissemination of information concerning an insurer's financial condition is *malum prohibitum* [7] and contrary to expressed principles of public policy.

Indiana Code 27–1–6–15, *supra*, establishes certain financial requirements for mutual insurance companies, such as Gibraltar. That portion of the statute which is in dispute was amended in 1977 to increase the surplus requirement:

"(a) Except as provided in subsection (b) a domestic mutual company that organized before July 1, 1977, must maintain a surplus of not less than two hundred fifty thousand dollars [$250,000]. This subsection does not apply to a company that is organized under I.C. 27–5." [8]

Gibraltar contends this section is unconstitutional, citing IND. CONST. art. I, § 24, "No ex post facto law, or law impairing the obligation of contracts, shall ever be passed." In support of its contention, Gibraltar merely asserts that application of I.C. 27–1–6–15 would impair Gibraltar's charter and "cause a demise of the opera-

tion of the business." Appellant's Brief at 17. Gibraltar has failed to support these bare assertions by any semblance of argument or relevant authority, and thus has failed to convince us of any merit in the assertion. *See Ogle v. St. John's Hickey Memorial Hospital* (1985) 2d Dist. Ind. App., 473 N.E.2d 1055, 1057, n. 2; Ind. Rules of Procedure, Appellate Rule 8.3(A)(7).

In any event, Gibraltar's argument is spurious. It seeks, through convoluted reasoning, to have this court declare I.C. 27–1–6–15 unconstitutional and thereby provide a basis for Gibraltar's cause of action. Gibraltar's argument is but an improper collateral attack upon a part of the General Assembly's regulatory scheme concerning the insurance business, a subject which Gibraltar itself concedes is properly within the exercise of a state's police power. *Vernon Fire & Casualty Insurance Co. v. Sharp* (1976) 264 Ind. 599, 349 N.E.2d 173. *Department of Insurance v. Schoonover* (1947) 225 Ind. 187, 72 N.E.2d 747. Such attack on the constitutionality of I.C. 27–1–6–15 is ancillary to Gibraltar's libel action and is also untimely because the issue before us does not involve a particular statute as specifically applied to Gibraltar. *See Ruge v. Kovach* (1984) Ind., 467 N.E.2d 673, 675.

The statute, on its face, requires Gibraltar, a domestic mutual company organized before 1977, to maintain a surplus of $250,000. It is not disputed that Gibraltar's surplus, as of December 31, 1981, was $55,034. Hoosier's letter to the Guaranty Association, written August 10, 1982, concerned Gibraltar's 1981 year-end surplus. It follows, therefore, that Hoosier's letter

---

**6.** Because we conclude that the contents of Hoosier's letter were true and not otherwise prohibited, we do not reach the question of whether the communication was privileged. *See generally Indianapolis Horse Patrol, Inc. v. Ward* (1966) 247 Ind. 519, 217 N.E.2d 626; *Shallenberger v. Scoggins-Tomlinson, Inc., supra*, 439 N.E.2d 699; *Elliott v. Roach* (1980) 4th Dist.Ind.App., 409 N.E.2d 661, on the question of privilege as an affirmative defense.

**7.** *Malum prohibitum* is commonly defined as "an act which is not inherently immoral, but becomes so because its commission is expressly forbidden by positive law." BLACK'S LAW DICTIONARY 865 (5th ed. 1979).

**8.** Indiana Code 27–5 authorizes and deals with creation of an operation of farmers' mutual insurance companies. Gibraltar does not fall within its provisions.

was not false when it alleged that Gibraltar was not in compliance with the statutory surplus requirement. Truth is a defense to an action for defamation. *Seenig v. Wood* (1976) 2d Dist., 169 Ind.App. 413, 440, 349 N.E.2d 235, 251.

■ Gibraltar argues, however, that I.C. 27-4-1-1 *et seq.* (Burns Code Ed.Supp. 1985), Indiana's unfair competition act regulating the insurance business, and its underlying public policy have by implication eliminated truth as a defense to libel. There are two aspects to Gibraltar's argument. Gibraltar first asserts that the statute prohibits dissemination of any statement impugning the financial condition of an insurer, and its prohibition applies regardless of the truth or falsity of the statement. Further, Gibraltar asserts that a statement or practice which violates the provisions of the statute gives rise to an independent action for libel, to which the defense of truth is inapplicable.

Gibraltar cites to no specific provision, and we have found none, which expressly eliminates truth as a defense to a charge of libel. Furthermore, Gibraltar's assertion that the statute effects an implied rejection of the common law of libel is unavailing. Statutory pronouncements in derogation of the common law are strictly construed and will not be held to abrogate the common law unless that intention is necessarily implied. *Evansville & Ohio Valley Ry. Co. v. Southern Indiana Rural Electric Corp.* (1953) 231 Ind. 648, 653, 109 N.E.2d 901, 903; *City of Indianapolis v. Indianapolis Water Co.* (1916) 185 Ind. 277, 113 N.E. 369; *Hosts, Inc. v. Wells* (1982) 3d Dist.Ind. App., 443 N.E.2d 319. *But cf., Brooks v. Robinson* (1972) 259 Ind. 16, 22, 284 N.E.2d 794, 797 (abolishing the common law doctrine of interspousal immunity). *Accord, Stream Pollution Control Board of Indiana v. United States Steel, Inc.* (N.D.Ind. 1974) 62 F.R.D. 31, *aff'd* (7th Cir.1975) 512 F.2d 1036; *State ex rel. Murray v. Estate of Riggens* (1975) 3d Dist., 164 Ind.App. 314, 328 N.E.2d 248.

The statute in question provides, in part:

"(1) Making, issuing, circulating, or causing to be made, issued or circulated, any estimate, illustration, circular, or statement:

\* \* \* \* \* \*

(C) Making any misleading representation or any misrepresentation as to the financial condition of any insurer, or as to the legal reserve system upon which any life insurer operates;

\* \* \* \* \* \*

(3) Making, publishing, disseminating, or circulating, directly or indirectly, or aiding, abetting or encouraging the making, publishing, disseminating or circulating of any oral or written statement or any pamphlet, circular, article or literature which is false, or maliciously critical of or derogatory to the financial condition of an insurer, and which is calculated to injure any person engaged in the business of insurance." I.C. 27-4-1-4.

The statute is a regulatory enactment designed to eliminate unfair competition acts and practices. The statute does not purport to change, or in any way affect, the nature of the common law relief afforded a party who has been libeled, whether by an act which constitutes unfair competition or otherwise. Because the statute is clear and unambiguous on its face, no interpretation is necessary. *Daugherty v. State* (1984) 1st Dist.Ind.App., 466 N.E.2d 46, 53.

■ Whether Hoosier's letter could be fairly construed as an "unfair method of competition" is not a question before us. The General Assembly has vested the Commissioner of Insurance with adequate and sufficient authority to investigate and remedy unfair or deceptive practices. *See e.g.* I.C. 27-4-1-5.

The question before us is whether the statute has effectively eliminated the affirmative defense of truth to an action for defamation. It does not do so.

■ Gibraltar also argues that the defense of truth has been impliedly eliminated by virtue of the provisions of I.C. 27-9-

2–3 and I.C. 27–1–3–11 (Burns Code Ed. Supp.1985). Indiana Code 27–9–2–3 guards the confidentiality of all documents, files and papers which concern or are part of the record of delinquency proceedings.[9] Indiana Code 27–1–3–11 prohibits the disclosure of information concerning the affairs of an insurance company under examination by the Department of Insurance. These sections, Gibraltar alleges, emphasize the legislature's intent to preserve the confidentiality of the financial concerns of insurers, without regard to the nature of the communication itself.

Gibraltar's argument is ingenious but unavailing. Neither I.C. 27–1–3–11 nor I.C. 27–9–2–3 provides support for Gibraltar's libel action. Both sections are applicable only in instances when an insurer is subjected to an "examination" or delinquency proceeding.

Indiana Code 27–1–3–9 requires the Department of Insurance to conduct an examination of every domestic insurance company at least once every three years. It is the information so obtained that I.C. 27–1–3–11 is designed to protect. In fact, once this information is embodied in the examiner's report, and the Department's recommendations, the prohibition against disclosure is no longer applicable. *See* I.C. 27–1–3–11(a).

■ Neither provision bears any relation to a private cause of action between insurers. We fail to see how a statement concerning an insurer's lack of statutory compliance is transformed, by these provisions, into libel per se.[10] We therefore conclude that the trial court properly granted summary judgment to Hoosier and Loudermilk.

Gibraltar's other allegation of error concerns the trial judge's qualifications to preside over the libel suit. Gibraltar contends for the first time on appeal that the trial judge had been legal advisor to the Governor of Indiana at the time I.C. 27–1–6–15 was enacted. As legal advisor, Gibraltar asserts, he was responsible for the expression of an opinion on the constitutionality of I.C. 27–1–6–15 and, therefore, must have been predisposed to find that I.C. 27–1–6–15 was constitutional.

■ Gibraltar has failed to preserve this issue for review. Gibraltar's allegations are unsupported by any references to the record, or citations of authority. *See* Appellate Rule 8.3(7). Gibraltar also does not state when the trial judge was advisor to the Governor or whether he in fact expressed an opinion on the constitutionality of I.C. 27–1–6–15. It is to be noted, however, that the Attorney General of Indiana is the Governor's lawyer and is required to advise concerning the constitutionality of any existing or proposed legislation. I.C. 4–6–2–5 (Burns Code Ed.Repl.1982).

■ Gibraltar has thus failed to show that the trial judge was biased or prejudiced. *Bentley v. State* (1981) 275 Ind. 67, 69, 414 N.E.2d 573, 575, *citing Pulliam v. State* (1976) 264 Ind. 381, 391, 345 N.E.2d 229, 238. In addition, Gibraltar did not assert error in this respect until after it received an adverse judgment at the trial court level and has waived any error which may have occurred. *See Nelson v. State* (1982) 4th Dist.Ind.App., 436 N.E.2d 1153; *Singleton v. State* (1977) 3d Dist., 173 Ind.App. 606, 364 N.E.2d 1041. In any event, the argument appears contrived and artificial. It does no credit to counsel.

The summary judgment in favor of Hoosier and Loudermilk and against Gibraltar is affirmed.

MILLER (participating in place of BUCHANAN, C.J.), and SHIELDS, JJ., concur.

---

9. Delinquency proceedings may be brought pursuant to I.C. 27–9–2–1 whenever the Commissioner of Insurance believes the condition of the insurer requires intervention to protect the insurer's policyholders, creditors or the public. See I.C. 27–9–3–1 and I.C. 27–9–3–6.

10. *See Norton v. Cooley* (1970) 146 Ind.App. 514, 257 N.E.2d 323, for a concise description of the requirements necessary to establish libel per se.